# Exhibit A

CFN # 10643323/ 'R BK 42775  Page 1379, Page  1 of 9, 1  'rded 09/15/2006 at
04:16 PM, Browa. County Commission, Doc M:  $1076.25 1. Tax $615.00 Deputy
Clerk 3240

Record and Return to:
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION,
A SUBSIDIARY OF INDY MAC BANK, F.S.B.
500 NORTH RIDGE ROAD STE. 500
ATLANTA, GEORGIA 30350

This document prepared by:

FINANCIAL FREEDOM SENIOR FUNDING CORPORATION

500 NORTH RIDGE ROAD STE. 500
ATLANTA, GEORGIA 30350

_____ [Space Above This Line For Recording Data] _____

**State of Florida**                                    FHA Case No

## ADJUSTABLE RATE
## HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **SEPTEMBER 01, 2006**   . The mortgagor is
Ulysses (

whose address is  5318 NE 17TH AVENUE,
POMPANO BEACH, FLORIDA 33064                                    ("Borrower").
This Security Instrument is given to
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION, A SUBSIDIARY OF INDY MAC
BANK, F.S.B.                                                    , which is
organized and existing under the laws of  THE STATE OF DELAWARE   , and whose address is
500 NORTH RIDGE ROAD STE. 500, ATLANTA, GEORGIA 30350
                                    ("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home
Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement").
The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument
("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note,
with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up
to a maximum principal amount of
THREE HUNDRED SEVEN THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $  307,500.00     ); (b) the payment of all other sums, with interest, advanced under Paragraph
5 to protect the security of this Security Instrument or otherwise due under the terms of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid
earlier, is due and payable on JANUARY 17    . 2083     . For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in  BROWARD
County, Florida:

3P46 : 12/03                        Page 1



EXhibit A

See Attached Legal Description

which has the address of

_____
[Street]

POMPANO BEACH        , FLORIDA              33064       ("Property Address");
[City]                  [State]              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This Insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

06XA : 02/02                          Page 2

CFN # 10643323;   R BK  42775  PG  1381,  Page  3 of 9

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. Inspection. Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 06/02                                                    Page 3

CFN # 10643323⁴ ⁀R BK 42775 PG 1382, Page 4 of 9

-⁴-

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **No Deficiency Judgments.** Lender shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

12. **Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower; (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

13. **Relationship to Second Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

X877 : 02/02                                      Page 6

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of 6.5700 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any Index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **DECEMBER, 2006** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 570/1000** percent ( 16.57000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Compound Interest.** At the end of each month, accrued interest shall be added to and made a part of the principal balance as a Loan Advance and shall likewise thereafter bear interest.

**25. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

X876 : 02/02  Page 7

CFN # 1064332    OR BK   42775   PG   1386,   Page   8 of 9

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider      ☐ Shared Appreciation Rider      ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____      _____ (Seal)
                                                                   -Borrower

_____      _____ (Seal)
                                                                   -Borrower

————————————— [Space Below This Line For Acknowledgment] —————————————

**STATE OF FLORIDA**      **COUNTY SS:** Broward

The foregoing instrument was acknowledged before me this  01ST   day of SEPTEMBER, 2006  , by ULYSSES C. BARKSDALE AND MYRTLE E. BARKSDALE

who is personally known to me or; who has produced *Drivers licenses*
as identification and who did (did not) take an oath.

                          _____
                          Notary Public

GEORGE DRIVAS
Notary Public - State of Florida
My Commission Expires Mar 14, 2009
Commission # DD 407266

              Name: GEORGE DRIVAS

# Exhibit B

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-8000

ASSISTANT SECRETARY FOR HOUSING-
FEDERAL HOUSING COMMISSIONER

**October 1, 2015**

| To | All Approved Mortgagees | **MORTGAGEE LETTER 2015-24** |

**Subject**    Single Family Foreclosure Policy and Procedural Changes for HUD
Title II Forward Mortgages and Reverse Mortgages

**Purpose**    The purpose of this Mortgagee Letter is to update HUD's:

- Reasonable Diligence timeframes;
- Schedule of Attorney Fees for all jurisdictions; and
- Cash for Keys' Relocation allowances

**Effective Date**    The updated Reasonable Diligence timeframes are effective for all cases
in which the First Legal Action to initiate foreclosure occurs on or after
January 1, 2016.

The updated Schedule of Attorney Fees is effective for all cases in which any
of the following actions occurs on or after January 1, 2016:

- a first legal action to foreclose is initiated;
- a bankruptcy clearance is undertaken;
- a possessory action has begun; or
- a deed-in-lieu of foreclosure is recorded.

The Cash for Keys' Relocation allowances are effective for all FHA-insured
mortgages for which a foreclosure sale or non-conveyance transaction is
scheduled on or after January 1, 2016.

**Affected Policy**    Beginning January 1, 2016, the policies set forth in this Mortgagee Letter
supersede all prior Reasonable Diligence timeframes, Attorney Fee schedules
and Cash for Keys' Relocation allowances, including those outlined in
Mortgagee Letters 2013-38 and 2002-13.

**Reasonable**    Pursuant to HUD regulation at 24 CFR 203.356(b), when foreclosure of a
**Diligence**    defaulted loan is necessary, mortgagees "must exercise reasonable diligence
**Requirements**    in prosecuting the foreclosure proceedings to completion and in acquiring title

www.hud.gov          espanol.hud.gov

Exhibit B

to and possession of the property." This regulation also states that HUD will make available to mortgagees a timeframe that constitutes "reasonable diligence" for each state.

Please see Attachment 1 for details on the First Legal Action necessary to initiate foreclosure on an FHA-insured mortgage, the typical security instrument to be used, and the Reasonable Diligence timeframes for completing foreclosure and acquisition of title in each state. HUD reserves the right to alter these state-specific timeframes to reflect evolving foreclosure completion timeframes and jurisdictional docket demands.

The Reasonable Diligence timeframe begins with the First Legal Action, required by the jurisdiction, to commence foreclosure and ends with the later date of acquiring good marketable title and possession of the property. HUD expects mortgagees to comply with all federal, state and local laws when prosecuting a foreclosure and pursuing a possessory action.

| | |
|---|---|
| **Reasonable Diligence Compliance: Related to Self-Curtailment** | Mortgagees are responsible for self-curtailment of interest and expenses on single-family claims when Reasonable Diligence timeframes or reporting requirements are not met. Mortgagees must identify the Interest Curtailment Date on form HUD-27011, Item 31. Attachment 2 includes examples for calculating the Interest Curtailment Date.

During its quality control review, if a mortgagee determines that it failed to properly self-curtail at claim submission, the mortgagee should remit claim-related payments to HUD through the "Claim Remittance" feature in FHA Connection. For more information on remitting payments, see FHA's "Quick Start Guide: Claims Processing Functions" at: https://entp.hud.gov/qckstart/sfsclaim.cfm. |
| **Delays and Compliance with Reasonable Diligence Timeframes** | When caused by circumstances beyond the mortgagee's control, delays in completing the foreclosure process may be treated as exceptions to the Reasonable Diligence timeframes and may be excluded in calculating the time to complete a foreclosure if an extension (automatic or otherwise) has been granted by HUD in EVARS or a successor system. The following are examples of acceptable delays:

- Mediation;
- Bankruptcy; and
- Acquiring Possession.

The mortgagee must maintain a comprehensive audit trail and chronology to support any delay in compliance with the Reasonable Diligence timeframes herein. |

| | |
|---|---|
| **Reasonable Diligence Timeframe Delay due to Mediation** | When mediation is required after the initiation of foreclosure but, before the foreclosure sale, the time required to complete the mediation may be excluded when determining the mortgagee's compliance with FHA's Reasonable Diligence timeframes. |

**Reasonable Diligence Timeframe Delay due to Bankruptcy**

When a mortgagor files for bankruptcy after the initiation of foreclosure, an automatic extension of the Reasonable Diligence timeframe for foreclosure and acquisition of the property will be allowed as long as:

- The mortgagee ensures that all necessary bankruptcy-related legal actions are handled in a timely and effective manner;
- The case is promptly referred to a bankruptcy attorney after the bankruptcy is filed; and
- The mortgagee monitors the action to ensure that the case is timely resolved.

Mortgagees should note that they will only be reimbursed for legal expenses related to resolving bankruptcies associated with claims for FHA-insured mortgages, if such legal expenses have not already been included in a loss mitigation option.

The timeframe allowed for recommending foreclosure will vary based on the Chapter under which the bankruptcy is filed as provided below:

- For a Chapter 7 bankruptcy, HUD allows an additional 90 days from the date of the release of stay;
- For a Chapter 11, 12, or 13 bankruptcy, HUD allows an additional 90 days from the date that the payments under the Bankruptcy Plan became 60 days delinquent.

For bankruptcy delays beyond the 90-day timeframes outlined above, the mortgagee must request an extension of time from HUD via EVARS and include documentation that the delay was not due to the mortgagee's failure to timely notify its bankruptcy attorney or by any failure of the mortgagee's attorney.

**Delay due to Legal Action for Acquiring Possession**

When a separate legal action is necessary to gain possession following foreclosure, an automatic extension of the Reasonable Diligence timeframe will be allowed for the actual time necessary to complete the possessory action. This extension is granted if the mortgagee takes the First Legal Action to initiate the eviction or possessory action within 30 calendar days of:

- the completion of foreclosure proceedings, or
- the expiration of federal, state or local restrictions on eviction.

4

HUD is not issuing policy guidance on timeframes for the completion of possessory actions because of the differences in such timeframes due to the location of a property and other factors outside of the mortgagee's control.

The additional time needed under applicable federal, state, or local laws to obtain possession of a property is taken into consideration when evaluating a mortgagee's compliance with HUD's Reasonable Diligence timeframe. Upon the expiration period associated with the applicable occupancy rights, mortgagees are expected to proceed promptly with possessory actions.

**Schedule of Attorney Fees**

HUD has updated its Schedule of Attorney Fees for the purpose of calculating the maximum amount that may be reimbursed in an FHA insurance claim for a foreclosure attorney fee, bankruptcy clearance fee, possessory action fee, and a completion of a deed-in-lieu fee (See Attachment 3). The Schedule of Attorney Fees reflects the customary legal services pertinent to mortgage defaults. Please note that each amount on the schedule is the total maximum reimbursable amount, instead of an hourly rate. The amount claimed for attorney fees must directly relate to work actually performed. Though actual costs for these legal services may potentially exceed fee amounts in the attached schedule, HUD will only reimburse mortgagees up to the amounts on the schedule.

The Schedule of Attorney Fees does not reflect additional expenses incurred due to foreclosure and/or mediation because of the wide differences in costs and lengths of time of foreclosure completion, depending on the jurisdictions in which the foreclosure actions are occurring. Any additional expenses incurred due to required legal actions (e.g., mediation or probate proceedings) are claimable with a documented cost breakdown and a written justification that must be retained in the servicer's claim review file.

In the event of a legal action ceasing for a loss mitigation option, a reinstatement, or a payment-in-full, the attorney fees to be paid by the mortgagor must be commensurate with the work actually performed up to the point of the cessation. Additionally, the amount charged may not be in excess of the attorney fee that HUD has established as reasonable and customary for claim purposes.

**Technology Fees and Electronic Invoice Fees**

HUD will not reimburse as part of a mortgagee's claim for mortgage insurance benefits any expenses incurred in connection with payment of technology fees or electronic invoice fees charged by the mortgagee or any entity utilized by the mortgagee. This includes any fees charged:

- on a per loan basis;
- on a "click charge basis; or
- for entering or accessing data in the mortgagees' system(s) or any other system.

5

| | |
|---|---|
| **Cash for Keys' Relocation Allowance** | After foreclosure, FHA allows mortgagees to offer a monetary consideration, known as "Cash for Keys", as an alternative to legal eviction.<br><br>If property occupants fail to vacate a property after receiving the first Notice to Quit, the mortgagee may offer up to $3,000 per dwelling in exchange for the occupants vacating the property within 30 days of the Cash for Keys' Relocation offer. |
| **Information Collection Requirements** | The information collection requirements contained in this document have been approved by the Office of Management and Budget (OMB) under the Paperwork Reduction Act of 1995 (44 U.S.C. 3501-3520) and assigned OMB control number 2502-0584. In accordance with the Paperwork Reduction Act, HUD may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection displays a currently valid OMB Control Number. |
| **Questions** | Any questions regarding this Mortgagee Letter may be directed to the HUD National Servicing Center at (877) 622-8525. Persons with hearing or speech impairments may reach this number by calling the Federal Information Relay Service at (800) 877-8339. For additional information on this Mortgagee Letter, please visit www.hud.gov/answers. |
| **Signature** | Edward L. Golding<br>Principal Deputy Assistant Secretary for Housing |

Attachments

**ATTACHMENT 1**                                                     Page 1 of 2

## FIRST LEGAL ACTIONS TO INITIATE FORECLOSURE AND
## REASONABLE DILIGENCE TIMEFRAMES EFFECTIVE 1/1/2016

| State Code | State | Typical Type of HUD Security Instrument | Normal Method of Foreclosure | First Legal Action to Initiate Foreclosure | Reasonable Diligence Timeframe (in months) |
|---|---|---|---|---|---|
| 01 | Alabama | Mortgage | Non-Judicial | Publication | 6 |
| 11 | Alaska | Deed of Trust | Non-Judicial | Recording of Notice of Default | 9 |
| 02 | Arizona | Deed of Trust | Non-Judicial | Recording of Notice of Sale | 5 |
| 03 | Arkansas | Deed of Trust | Non-Judicial | Recording of Notice of Sale | 9 |
| 04 | California | Deed of Trust | Non-Judicial | Recording of Notice of Default | 11 |
| 05 | Colorado | Deed of Trust | Non-Judicial | Filing of Foreclosure Documents with Public Trustee | 8 |
| 06 | Connecticut | Mortgage | Judicial | Delivering Complaint to Sheriff | 19 |
| 07 | Delaware | Mortgage | Judicial | Complaint | 20 |
| 08 | District of Columbia | Deed of Trust | Non-Judicial | Notice of Default to Mayor | 7 |
| 09 | Florida | Mortgage | Judicial | Complaint | 21 |
| 10 | Georgia | Security Deed | Non-Judicial | Publication | 5 |
| 83 | Guam | Mortgage | Non-Judicial | Posting and Publishing of Notice of Sale | 11 |
| 14 | Hawaii | Mortgage | Judicial | Complaint | 22 |
|  |  | Mortgage | Non-Judicial | Publication of Notice of Intent to Foreclose | 6 |
| 12 | Idaho | Deed of Trust | Non-Judicial | Recording of Notice of Default | 12 |
| 13 | Illinois | Mortgage | Judicial | Complaint | 15 |
| 15 | Indiana | Mortgage | Judicial | Complaint | 13 |
| 16 | Iowa | Mortgage | Judicial | Petition | 17 |
|  |  | Deed of Trust | Non-Judicial | Filing of Notice or Voluntary Foreclosure Agreement with Recorder | 9 |
| 18 | Kansas | Mortgage | Judicial | Complaint | 9 |
| 20 | Kentucky | Mortgage | Judicial | Complaint | 12 |
| 22 | Louisiana | Mortgage | Judicial | Petition for Executory Process | 11 |
| 23 | Maine | Mortgage | Judicial | Complaint | 17 |
| 24 | Maryland | Mortgage | Judicial | Complaint | 16 |
|  |  | Deed of Trust | Non-Judicial | Filing an Order to Docket | 16 |
| 25 | Massachusetts | Mortgage | Non-Judicial | Filing of Complaint[1] | 9 |
| 26 | Michigan | Mortgage | Non-Judicial | Publication | 9 |

[1] The mortgagee must first obtain a judgment from the Land Court verifying that the mortgagors are not entitled to relief under the Servicemembers Civil Relief Act (SCRA).

**ATTACHMENT 1**

| State Code | State | Typical Type of HUD Security Instrument | Normal Method of Foreclosure | First Legal Action to Initiate Foreclosure | Reasonable Diligence Timeframe (in months) |
|---|---|---|---|---|---|
| 27 | Minnesota | Mortgage Deed | Non-Judicial | Publication | 10 |
| 28 | Mississippi | Deed of Trust | Non-Judicial | Publication | 9 |
| 29 | Missouri | Deed of Trust | Non-Judicial | Publication | 5 |
| 31 | Montana | Trust Indenture | Non-Judicial | Recording of Notice of Sale | 9 |
| 32 | Nebraska | Mortgage | Judicial | Petition | 8 |
|  |  | Deed of Trust | Non-Judicial | Publication of Notice of Sale | 8 |
| 33 | Nevada | Deed of Trust | Non-Judicial | Recording of Notice of Default | 17 |
| 34 | New Hampshire | Mortgage | Non-Judicial | Publication | 8 |
| 35 | New Jersey | Mortgage | Judicial | Complaint | 19 |
| 36 | New Mexico | Mortgage | Judicial | Complaint | 18 |
| 37 | New York City | Mortgage | Judicial | Complaint | 27 |
|  | New York | Mortgage | Judicial | Complaint | 21 |
| 38 | North Carolina | Deed of Trust | Non-Judicial | Notice of Hearing | 9 |
| 40 | North Dakota | Mortgage | Judicial | Complaint | 15 |
| 41 | Ohio | Mortgage Deed | Judicial | Complaint | 13 |
| 42 | Oklahoma | Mortgage | Judicial | Petition | 13 |
| 43 | Oregon | Deed of Trust | Non-Judicial | Recording of Notice of Default | 14 |
| 44 | Pennsylvania | Mortgage | Judicial | Complaint | 19 |
| 50 | Puerto Rico | Mortgage | Judicial | Complaint | 18 |
| 45 | Rhode Island | Mortgage | Non-Judicial | Publication | 16 |
| 46 | South Carolina | Mortgage | Judicial | Complaint | 14 |
| 47 | South Dakota | Mortgage | Judicial | Complaint | 13 |
|  |  | Deed of Trust | Non-Judicial | Publication of Notice of Sale | 9 |
| 48 | Tennessee | Deed of Trust | Non-Judicial | Publication | 4 |
| 49 | Texas | Deed of Trust | Non-Judicial | Posting and Filing of the Notice of Sale | 7 |
| 52 | Utah | Mortgage | Judicial | Complaint | 12 |
|  |  | Deed of Trust | Non-Judicial | Recording of Notice of Default | 12 |
| 53 | Vermont | Mortgage | Judicial | Complaint | 21 |
| 54 | Virginia | Deed of Trust | Non-Judicial | Publication | 7 |
| 82 | Virgin Islands | Mortgage | Judicial | Complaint | 15 |
| 56 | Washington | Deed of Trust | Non-Judicial | Recording of Notice of Trustee's Sale | 16 |
| 57 | West Virginia | Deed of Trust | Non-Judicial | Publication | 5 |
| 58 | Wisconsin | Mortgage | Judicial | Complaint | 12 |
| 59 | Wyoming | Mortgage | Non-Judicial | Publication | 6 |

### CALCULATING THE INTEREST CURTAILMENT DATE

The following examples illustrate how to calculate the date on which debenture interest can be claimed. This calculation will take into account the date on which the First Legal Action to initiate foreclosure was taken and the reporting cycle in which the action was properly reported, pursuant to 24 CFR 203.356(a). Mortgagees will be considered in compliance with the reporting requirements of 24 CFR 203.356(a) when the case is properly reported in the Single Family Default Monitoring System (SFDMS) for the reporting cycle (or the subsequent reporting cycle) in which the First Legal Action required to initiate foreclosure is taken.

If one or more time requirements have been missed, the Interest Curtailment Date will be the date of the earliest missed time requirement. Mortgagees will be responsible for self-curtailment and must identify the appropriate Interest Curtailment Date on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

**Example 1**: Mortgagee fails to initiate foreclosure on a timely basis in the State of Alabama.

| | |
|---|---|
| Date of Default | 09/01/2012 |
| Deadline to initiate foreclosure | 03/01/2013 |
| First Legal Action to foreclose | 04/21/2013 |
| SFDMS reflects Status 68[1] for reporting cycle ending | 04/30/2013 |
| SFDMS reflects Status1A[2] for reporting cycle ending | 10/31/2013 |
| Date reflected in Item 9 (Date of possession & acquisition of marketable title) of form HUD-27011 | 11/30/2013 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 12/28/2013 |

In this example, the mortgagee did not initiate foreclosure within six months of the date of default as required by 24 CFR 203.355(a). The claim system will automatically curtail interest to March 1, 2013, (i.e., the deadline to initiate foreclosure within six months from the default date).

**Example 2**: Mortgagee initiates foreclosure on a timely basis but, exceeds the State of Alabama's reasonable diligence timeframe for completing the action without a valid documented reason.

| | |
|---|---|
| Date of Default | 12/01/2012 |
| First Legal Action to foreclose | 05/10/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 05/30/2013 |
| 6-month reasonable diligence timeframe for State | 11/10/2013 |
| SFDMS reflects Status 1A for reporting cycle ending | 12/31/2013 |
| Date reflected in Item 9 (Date of possession & acquisition of marketable title) of form HUD-27011 | 01/31/2014 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 02/28/2014 |

---

[1] First Legal Action to Commence Foreclosure

[2] Foreclosure Sale Held

        In this example, the mortgagee initiated foreclosure within six months of the date of
default as required by 24 CFR 203.355(a) and, within the required reporting cycle, properly
reported the action in SFDMS using Status Code 68. However, the mortgagee did not meet the
reasonable diligence requirement for completing the foreclosure in six months (by November 10,
2013, based on the May 10 initiation of foreclosure). This requires a curtailment of interest to
November 10, 2013, and that date would have to be reflected on form HUD-27011, Item 31
(Mortgagee Reported Curtailment Date).

**Example 3**: A timely initiated foreclosure action in the State of Tennessee is delayed by a
mortgagor's Chapter 7 bankruptcy filing, but the mortgagee takes more than 90 days from the
date of bankruptcy filing to resolve the case through a dismissal, termination of the automatic
stay, or trustee abandonment of all interest in the secured property. The mortgagee does not
document that the delay was not due to the failure of the mortgagee to timely notify its
bankruptcy attorney or by any failure of the mortgagee's attorney.

| | |
|---|---|
| Date of Default | 12/01/2012 |
| First Legal Action to foreclose | 04/10/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 04/30/2013 |
| Date Chapter 7 Bankruptcy filed | 05/10/2013 |
| Date reflected in Item 21 (Date of release of bankruptcy, if applicable) of form HUD-27011 | 09/15/2013 |
| End of authorized 90-day bankruptcy delay | 11/8/2013 |
| SFDMS reflects Status 1A for reporting cycle ending | 12/31/2013 |
| Date reflected in Item 9 (Date of possession & acquisition of marketable title) of form HUD-27011 | 01/31/2014 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 02/28/2014 |

        In this example, the mortgagee initiated foreclosure within six months of the date of
default as required by 24 CFR 203.355(a) and, within the required reporting cycle, properly
reported the action in SFDMS using Status Code 68. However, the reasonable diligence
requirement for resolving the bankruptcy case and completing the foreclosure was not met. The
State of Tennessee's Reasonable Diligence timeframe for foreclosure completion is four months;
without delays, the foreclosure should have been completed by August 10, 2013. A 90-day
extension is authorized for resolving a bankruptcy case, so a foreclosure with a 90-day
authorized bankruptcy delay should have been completed by November 8, 2013. The interest
curtailment date for claim purposes would therefore be November 8, 2013, and that date would
have to be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

**Example 4**: A timely initiated foreclosure action is delayed by a mortgagor's Chapter 13
bankruptcy filing in the State of Arizona and the mortgagor subsequently defaults on a confirmed
Bankruptcy Plan. The mortgagee takes more than 90 days from the date that the plan payments
become 60 days delinquent to resolve the case through a dismissal, termination of the automatic
stay, or trustee abandonment of all interest in the secured property. The mortgagee does not
document that the delay was not due to its failure to timely notify its bankruptcy attorney or by
any failure of its attorney.

| | |
|---|---|
| Date of Default | 04/01/2013 |
| First Legal Action to foreclose | 09/09/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 09/30/2013 |
| Date Chapter 13 Bankruptcy filed | 10/09/2013 |
| Mortgagor's timely Bankruptcy Plan Payments Nov through Feb advance Date of Default to | 08/01/2013 |
| Bankruptcy Plan Payments become 60 days delinquent | 04/30/2014 |
| Deadline for mortgagee to meet modified reasonable diligence timeframe | 07/29/2014 |
| Date reflected in Item 21 (Date of release of bankruptcy) of form HUD-27011 | 09/10/2014 |
| Permissible end of bankruptcy delay (for claims purposes) | 11/30/2014 |
| SFDMS reflects Status 1A (Foreclosure Sale Held) for reporting cycle ending | 12/31/2014 |
| Date reflected in Item 9 (Date of possession & acquisition of marketable title) of form HUD-27011 | 01/31/2015 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 02/28/2015 |

In this example, the mortgagee properly initiated foreclosure within six months of the date of default as required by 24 CFR 203.355(a) and, within the required reporting cycle, reported the action in SFDMS using Status Code 68. However, the reasonable diligence requirement for resolving the Chapter 13 bankruptcy case and completing the foreclosure was not met, and the mortgagee did not provide any documentation demonstrating that it was not responsible for the delay; therefore, the mortgagee must self-curtail.

Bankruptcy Plan payments, due on the first of each month, became 60 days delinquent on April 30, 2014. Pursuant to HUD's policy, the mortgagee had a maximum of 90 days from April 30, 2014, to resolve the bankruptcy case because no valid reason for further delay was documented. Accordingly, the bankruptcy should have been resolved no later than July 29, 2014. Since the date of the bankruptcy release was September 10, 2014, the mortgagee failed to meet its reasonable diligence requirement.

For purposes of filing a claim, the total authorized delay due to the bankruptcy was 294 days, the amount of time between October 9, 2013 (the bankruptcy filing date) and July 29, 2014 (the end of the reasonable diligence timeframe as based on the bankruptcy-advanced default date). The mortgagee's timeframe for meeting the reasonable diligence requirement in this Arizona case is five months plus 294 days (the authorized bankruptcy-related delay) after the date of the first legal action to foreclose. Accordingly, the Interest Curtailment Date for claim purposes is November 30, 2014, and this date must be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

**Example 5**: The mortgagee exercises reasonable diligence in completing a foreclosure in the State of Alabama but does not initiate eviction or possessory action within 30 calendar days of foreclosure completion to qualify for an extension of the Reasonable Diligence timeframe.

| | |
|---|---|
| Date of Default | 01/01/2013 |
| First Legal Action to foreclose | 05/10/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 06/30/2013 |
| Foreclosure Completion Date | 10/27/2013 |
| Deadline to initiate possessory action | 11/26/2013 |
| Possessory action initiated | 12/15/2013 |
| SFDMS reflects Status $1E^3$ for reporting cycle ending | 12/31/2013 |
| Date reflected in Item 9 (Date of possession & acquisition of marketable title) of form HUD-27011 | 01/20/2014 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 02/16/2014 |

In this example, the mortgagee met the reasonable diligence requirements for initiating, reporting, and completing the foreclosure action. However, action to acquire possession of the property was not initiated within 30 calendar days of foreclosure completion. The foreclosure was completed on October 27, 2013, so the mortgagee had 30 days (i.e., until November 26, 2013) to initiate possessory action. As the mortgagee did not initiate possessory action until December 15, 2013, a curtailment of interest is required and the date of November 26, 2013 would have to be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment date).

**Example 6**: The mortgagee fails to convey a property in Texas to HUD within 30 calendar days of acquiring possession and marketable title, as required by 24 CFR 203.359.

| | |
|---|---|
| Date of Default | 01/01/2013 |
| First Legal action to foreclose | 05/10/2013 |
| SFDMS reflects Status 68 for reporting cycle ending | 06/30/2013 |
| SFDMS reflects Status 1A for reporting cycle ending | 10/31/2013 |
| Date reflected in Item 9 (Date of possession & acquisition of marketable title) of form HUD-27011 | 12/29/2013 |
| Deadline to convey to HUD | 01/28/2014 |
| Date reflected in Item 10 (Date deed or assignment filed for record or date of closing or appraisal) | 02/28/2014 |

In this example, the mortgagee exercised reasonable diligence in prosecuting the foreclosure to completion and in acquiring title to and possession of the property. However, it did not meet the requirement to convey the property to HUD within 30 calendar days of acquiring possession and marketable title as required by 24 CFR 203.359.

Title was acquired by the mortgagee on December 29, 2013, and the mortgagee had 30 days from that date (i.e., until January 28, 2014) to convey the property to HUD. The deed to HUD was not filed for recording until February 28, 2014. Accordingly, the mortgagee's failure to timely convey the property to HUD requires a curtailment of interest to January 28, 2014, and this date must be reflected on form HUD-27011, Item 31 (Mortgagee Reported Curtailment Date).

---

[3] Eviction started

## ATTACHMENT 3

### HUD SCHEDULE OF STANDARD ATTORNEY FEES – EFFECTIVE 1/1/2016

| State | Non-judicial Foreclosure | Judicial Foreclosure | Bankruptcy Clearance | Possessory Action | Deed-in-lieu |
|-------|--------------------------|----------------------|----------------------|-------------------|--------------|
| AK | $1,625 | | Varies[13] | $500 | $400 |
| AL | $1,325[1] | | Varies[13] | $500 | $400 |
| AR | $1,475 | | Varies[13] | $500 | $400 |
| AZ | $1,350 | | Varies[13] | $400 | $400 |
| CA | $1,425[2] | | Varies[13] | $550 | $400 |
| CO | $1,650 | | Varies[13] | $450 | $400 |
| CT | | $2,450[3,4] | Varies[13] | $400 | $400 |
| DC | $1,200[1] | $2,250 | Varies[13] | $400 | $400 |
| DE | | $1,900 | Varies[13] | $450 | $400 |
| FL | | $2,800[11] | Varies[13] | $400 | $400 |
| GA | $1,325 | | Varies[13] | $450 | $400 |
| GU | $1,625 | | Varies[13] | $350 | $400 |
| HI | | $2,950[7] | Varies[13] | $525 | $400 |
| IA | $1,275 | $1,850 | Varies[13] | $350 | $400 |
| ID | $1,250 | | Varies[13] | $400 | $400 |
| IL | | $2,300 | Varies[13] | $400 | $400 |
| IN | | $2,050 | Varies[13] | $450 | $400 |
| KS | | $1,800 | Varies[13] | $400 | $400 |
| KY | | $2,250 | Varies[13] | $400 | $400 |
| LA | | $1,900 | Varies[13] | $500 | $400 |
| MA | $2,550 | $2,550[3] | Varies[13] | $625 | $400 |
| MD | $2,500[5] | | Varies[13] | $500 | $400 |
| ME | | $2,300 | Varies[13] | $525 | $400 |
| MI | $1,425 | | Varies[13] | $425 | $400 |
| MN | $1,450 | $1,800 | Varies[13] | $400 | $400 |
| MO | $1,375 | | Varies[13] | $450 | $400 |
| MS | $1,300[1] | | Varies[13] | $400 | $400 |
| MT | $1,250 | | Varies[13] | $400 | $400 |
| NC | $1,575 | | Varies[13] | $400 | $400 |
| ND | | $1,800 | Varies[13] | $350 | $400 |
| NE | $1,250 | $1,950 | Varies[13] | $350 | $400 |
| NH | $1,450 | | Varies[13] | $425 | $400 |
| NJ | | $2,975 | Varies[13] | $500 | $400 |
| NM | | $2,050 | Varies[13] | $400 | $400 |
| NV | $1,525 | | Varies[13] | $650 | $400 |
| NY | $,1225[9] | $2,900[3,9] | Varies[13] | $725 | $400 |
| OH | | $2,250 | Varies[13] | $600 | $400 |
| OK | | $2,000 | Varies[13] | $350 | $400 |
| OR | $1,425 | $2,600 | Varies[13] | $400 | $400 |
| PA | | $2,350 | Varies[13] | $450 | $400 |
| PR | | $2,050[3,10] | Varies[13] | $300 | $400 |
| RI | $1,725 | | Varies[13] | $525 | $400 |
| SC | | $2,200 | Varies[13] | $450 | $400 |

**ATTACHMENT 3**

| State | Non-judicial Foreclosure | Judicial Foreclosure | Bankruptcy Clearance | Possessory Action | Deed-in-lieu |
|-------|-------------------------|---------------------|---------------------|-------------------|--------------|
| SD | | $1,800 | Varies[13] | $400 | $400 |
| TN | $1,300 | | Varies[13] | $375 | $400 |
| TX | $1,325 | $1,800 | Varies[13] | $400 | $400 |
| UT | $1,325 | | Varies[13] | $400 | $400 |
| VA | $1,350 | | Varies[13] | $600 | $400 |
| VI | | $1,800 | Varies[13] | $300 | $400 |
| VT | $1,600 | $2,250 | Varies[13] | $375 | $400 |
| WA | $1,500 | | Varies[13] | $450 | $400 |
| WI | | $2,050 | Varies[13] | $400 | $400 |
| WV | $1,250[1,5] | | Varies[13] | $400 | $400 |
| WY | $1,250 | | Varies[13] | $500 | $400 |

**Footnotes:**

(1) This fee covers the combined attorney's and notary's fees.

(2) This fee applies to completed foreclosures. If the mortgage loan is reinstated, the maximum fee is the amount allowed under applicable law, not to exceed $725 for reinstatements after recording the Notice of Default but before mailing the Notice of Sale, or $1,075 for reinstatements after mailing the Notice of Sale but before the Trustee's sale.

(3) An additional $200 will be permitted when the property is sold to a third party and the attorney must perform additional work to complete the transfer of title to the successful bidder.

(4) This fee applies to Strict Foreclosures. If the court orders a Foreclosure by Sale (or a Foreclosure by Market Sale on or after January 1, 2015), the fee will be $2,700.

(5) This fee includes the attorney's fee, the notary's fee and the trustee's commission (or statutory fee).

(6) [Reserved]

(7) A fee of $3,950 will be permitted for judicial foreclosures in locations other than Honolulu County.

(8) [Reserved]

(9) In New York, the non-judicial foreclosure process is to be used only in connection with cooperative share loans. The fee includes all steps in the foreclosure process, including the transfer of the stock and the lease for an occupied cooperative unit. The allowable fee for judicial foreclosures in New York, where judgment is obtained as a result of an uncontested trial, is established at $3,650. For judicial foreclosures in the City of New York and on Long Island (Nassau and Suffolk Counties), the allowable fee is $3,500 (or $4,250 if judgment is obtained via uncontested trial).

(10) In addition to the allowable foreclosure fee, HUD will pay a notary fee up to the greater of $250 or one percent (1%) of the bid amount on the mortgage being foreclosed.

(11) The allowable fee for foreclosures in Florida, where judgment is obtained as a result of an uncontested trial, is established at $3,550.

(12)   When a servicer requests reimbursement from HUD for a fee amount based on specified conditions contained in a footnote above, the servicer's reimbursement request must contain a description or sufficient supporting documentation to allow HUD to properly evaluate the request.

(13)   This fee assumes that all required procedural steps have been completed. The maximum attorney fee varies based on the chapter under which the bankruptcy action is filed.

- For Chapter 7 bankruptcies, the maximum allowable fee is $1,175.
  1. Motion for Relief is $750
  2. Proof of Claim Preparation (if required) is $300
  3. Reaffirmation Agreement is $125

- For Chapter 11 bankruptcies, the maximum allowable fee is $1,600.
  1. Proof of Claim Preparation & Plan Review is $750
  2. Motion for Relief is $850

- For Chapter 12 bankruptcies, the maximum allowable fee is $2,100.
  1. Proof of Claim Preparation & Plan Review is $750
  2. Objection to Plan is $500
  3. Motion for Relief is $850

- For Chapter 13 bankruptcies, the maximum allowable fee is $2,850
  1. Proof of Claim Preparation & Plan Review is $650
  2. Objection to Plan is $500
  3. Motion for Relief is $850
  4. Payment Change Notification (if needed) is $50
  5. Notice of Fees, Expenses, and Charges is $100
  6. Post-Stipulation Default / Stay Termination is $50/**$200**
  7. Response to Final Cure Payment Notice is $50 (agreed) / **$500** (objection)

# Exhibit C



**ELMORE**
FLORIDA HARDEST HIT FUND

Hardest Hit Fund Approval Letter

Date: 3/29/16

Dear: M R

Congratulations! You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $ 36,134.83    in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds. The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $ 33184.59         plus one year of anticipated property tax and/or insurance payments in the amount of $ 2,950.24      . The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage. These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan. In the event of a conflict, the terms and conditions of the loan documents will control.

Florida HHF-ELMORE Approval Letter (09-2015)



Exhibit C

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to receive and the requirements that you must meet in order to receive assistance under the program by signing below. If at any time it is determined that you provided inaccurate or false information, or withheld information, in making application for assistance under the Florida Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

_____ Date: _____
Borrower

_____ Date: _____
Co-Borrower

Florida HHF-ELMORE Approval Letter (09-2015)

FHFC Loan # 70877

## FLORIDA HOUSING FINANCE CORPORATION
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## SUMMARY DISCLOSURE OF LOAN TERMS

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**     Up to $50,000.00.

**Interest Rate:**     0%

**Term of Loan:**     Two years.

**Forgivable:**       The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:**       If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:**       The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**       No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

**HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.**

**I/We acknowledge receipt of this Summary Disclosure of Loan Terms.**

X   MR   1   Date: March 31, 2016
**BORROWER**
Print name   MR

_____   Date: _____
**BORROWER**
Print name: _____

## PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

Date of this Note: _____ 3/29/2016 _____          FHFC Loan # 70877 _____

"**Property**" means the Borrower's residence located at:

|  |  |  | 33060 |
| --- | --- | --- | --- |
| Street Address | City | State | Zip Code |

"**First Mortgage Loan**" means the loan evidenced by the mortgage encumbering the Property dated ___ 02/02/2010 ___ given by _____ Financial Freedom Acquisition, LLC. _____ to _____ MR. _____ as recorded in Official Records Book ___ 47038 ___, page ___ 1835 ___, or under clerk's instrument # _____, of the public records of _____ Broward _____ County, Florida.

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or so much thereof as may be advanced pursuant to the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329. The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $50,000.00 as provided in Section 2. below.

### 2.    THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

---

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

---

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $50,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $50,000.00.

3.  **INTEREST**

The interest on this Note shall be zero percent (0%) per annum.

4.  **REPAYMENT**

(A)   I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)   I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

5.  **FORGIVENESS.**

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

6.  **BORROWER'S PAYMENT BEFORE PAYMENT IS DUE**

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

7.  **DEFAULT**

(A)   **Default.** I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)     **Notice of Default.** If I am in default, the Lender may, but is not required to, send me a written notice.

(C)     **No Waiver by Lender.** Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)     **Payment of Lender's Costs and Expense.** If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

## 8.     MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

## 9.     BORROWER'S WAIVERS

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

## 10.    GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above. A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

## 11.    RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

## 12. LIMITS ON PERSONAL LIABILITY

(A) Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B) The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

## 13. HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW

(A) The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B) If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C) No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D) This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

## 14. ATTACHMENTS

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

PROMISSORY NOTE SIGNATURE PAGE
FLORIDA HOUSING FINANCE CORPORATION
FLORIDA HARDEST HIT FUND (HHF) PROGRAM
ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

### NOTICE TO BORROWER
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.
ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

SIGN ORIGINAL ONLY.

<u>MR</u>
**BORROWER**
Print Name: MR

**BORROWER**
Print Name: _____

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

FHFC Loan # 70877

## RIDER TO PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.**

A.  **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.  **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C.   **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D.   **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E.   **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this 3\ day of March , 201 6

x ᵢ Mᴿ   _____
Borrower
Print name   •   _____


_____
Borrower
Print name:   _____

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # 70877

## SUBORDINATE MORTGAGE
### (WITH DUE ON SALE OR REFINANCE CLAUSE)

### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

THIS SUBORDINATE MORTGAGE (this "Mortgage") is made this 29th day of _____March_____, 20 16 , by _____ (herein, the "Borrower") whose address is _____ 1060 _____ (this address is Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as _____ by the mortgage dated ___02/02/2010___ from Financial Freedom Acquisition, LLC. to _____ in the original principal amount of $ 165,000.00 _____ and recorded in OR Book ___47038___, Page ___1835___, or under clerk's instrument # _____, of the public records of _____ Broward _____ County, Florida.

This Mortgage is subordinate to the First Mortgage.

**TO SECURE** to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of _____ Broward _____, State of Florida (insert legal description):

### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

**TOGETHER** with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

"Home."

**BORROWER COVENANTS** represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

**PROVIDED ALWAYS** that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

**BORROWER FURTHER COVENANTS** and agrees with Lender as follows:

1. **Payment.** Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

2. **Funds for Taxes and Insurance.** Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Liability and Hazard Insurance.** Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance by Lender Not a Waiver.** No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements an references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrow property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with r

2

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

12.     **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

13.     **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.     **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

15.     **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

16.     **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

17.     **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

18.     **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

19.     **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

20.     **Special Provisions.**

        (a)     **Default.** In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

        (b)  .   **Mortgage Not Assumable.** This mortgage cannot be assumed.

        (c)     **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale, and, in the case of a refinance, only to the extent of any cash back to the Borrower. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan. If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

3

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

(d) **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

IN WITNESS WHEREOF, Borrower has executed this Mortgage on the date first above written.

NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

Witnesses:

Print name: _Carla Gardner_

Print name: _Jeffrey Hittleman_

Borrower
Print name: Marie Renaud

Witnesses:

Print name: _____

Borrower
Print name: _____

Print name: _____

STATE OF FLORIDA
COUNTY OF Broward

as acknowledged before me this 31 day of March, 2016 by _____. Such person(s) is (are)
(check one) _____ personally known to me or _____ who produced a driver's license(s) as identification. FL ND XXX'

Notary Public, State of Florida
Print Name: Lorraine Livingston, ESQ.
Commission No.: FFEE 221628
Commission Expires: 3 1 2016

# <u>Exhibit D</u>



**Financial Freedom**
THE REVERSE MORTGAGE SPECIALIST®

June 13, 2016

Corrine E. Lincoln, Esq.
Coast to Coast Legal Aid of South Florida, Inc.
491 North State Road 7, Second Floor
Plantation, FL 33317

*Re:   Customer   MR*
*Property Address: 1* ................
*Financial Freedom Loan Number:*

Dear Ms. Lincoln:

I am writing in response to your Qualified Written Request (QWR) dated May 10, 2016, containing an Error Notice and Request for Information regarding the above-referenced loan. We are responding directly to you, as requested by . MR : signed authorization that was included with your correspondence. I appreciate this opportunity to address your concerns.

This loan is a Home Equity Conversion Mortgage (HECM), a type of reverse mortgage insured by the Federal Housing Administration (FHA) and administered by the U.S. Department of Housing and Urban Development (HUD), which . MR ined in February 2010. Financial Freedom, a division of CIT Bank, N.A., services the loan on behalf of the investor (the owner of the loan) in accordance with HUD guidelines.

You state under the Notice of Error section that you are disputing the reinstatement amount that Financial Freedom provided Florida's Hardest Hit Fund (HHF) program Elderly Mortgage Assistance Program (ELMORE). Specifically, you allege that Financial Freedom provided ELMORE a reinstatement amount of $33,184.59; however, our records reflect that we notified ELMORE that the outstanding delinquency was $15,479.07. Any amount we received beyond the delinquency amount was the decision of ELMORE. We were not involved in any counseling, discussions, or decisions that were made between ' MR ' and ELMORE regarding the balance of the HHF promissory note.

On April 8, 2016, we received $36,134.83 from ELMORE. After paying the outstanding delinquency of $15,479.07, the remaining funds were placed into an account for one (1) year to be used towards any new defaults, advances, or servicing fees. To date, we have paid the 2015 property taxes to Broward County Tax Collector and we paid QBE $2,523.00 for lender-paid insurance from MR HHF account, which is reflected in the enclosed *Itemized Statement*. At the end of the one (1) year period, any remaining funds will be applied to her loan balance. Unfortunately, we are unable to return any overages to ELMORE.

One provision of the HECM loan is that it is the customer's responsibility to pay property taxes and insurance on a timely basis and provide evidence of payment to Financial Freedom. *The Closed-End Fixed Rate Home Equity Conversion Mortgage*, which gned at the loan closing, reads in

---

EXHIBIT D

Paragraph 2, *"Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender..."* It further states in Paragraph 5, *"If Borrower fails to make these payments or the property charges required by Paragraph 2...then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance, and other items mentioned in Paragraph 2."*

The enclosed *Itemized Statement* (**Attachment A**) describes the amounts we paid for property insurance ( MR 'behalf, the line of credit available 'time of the first default, the repayments that she has made, the remaining amount due of $0.00, the HHF disbursement description, and the remaining HHF available. Payments on 1 MR d's behalf are considered advances of Financial Freedom's funds. In accordance with HUD's HECM guidelines, payments of taxes or insurance on behalf of the borrower must be repaid because non-payment of taxes or insurance constitutes a default under the terms of the loan. Since any remaining funds in the HHF account will be applied to the loan balance at the end of the one (1) year period, going forward, it is imperative that MR provide us with evidence of her continued hazard insurance policy and proof that her property taxes are paid on a yearly basis.

Our records indicate that we previously contacted MR d requesting that she send us adequate proof of insurance and indicated that we would lender-place insurance on her behalf if no proof of insurance was provided. As required by HUD guidelines, and because we received no proof of insurance, Financial Freedom lender-placed insurance on the property using the overage funds from ELMORE for the coverage period of March 30, 2016 through March 30, 2017.

At this time, we have received an invoice from Citizens Property Insurance Corporation along with MR 's signed written request asking us to advance payment of the invoice but we have not received any proof of adequate coverage. We are currently processing this request, and the invoice will be paid from the HHF account. If MR d is able to provide proof of adequate coverage for the prior periods that Financial Freedom obtained coverage on her behalf, refunds will be applied to the loan balance based upon the effective dates of such coverage. I would encourage you to have MR ' send proof of coverage from Citizens once the invoice is paid.

We have reviewed your correspondence pursuant to recent amendments to the regulations implementing Real Estate Settlement Procedures Act (RESPA) (Regulation X) to determine whether it constitutes a valid Error Notice or a valid Request for Information as defined in Regulation X at 12 C.F.R. § 1024.35 and 1024.36. Federal courts have determined that demanding a laundry list of information or making overbroad requests for documents does not constitute a QWR under RESPA. As a result, we have determined that your demand for information does not constitute a valid Request for Information as it is overbroad and unduly burdensome. Additionally, most of the information requested is (i) irrelevant (not directly related to the mortgage loan) or (ii) confidential, proprietary or privileged. A Request for Information is not a vehicle for obtaining information regarding the servicer's general business practices, including but not limited to, its operations, internal correspondence, systems of record, servicing by a prior servicing company, or business relationships.

Although your correspondence does not include a proper Request for Information, to the extent that we have been able to ascertain your concerns, we have provided information and included

Corrine E. Lincoln, Esq.
6/13/2016
Page 3 of 3

documents. Enclosed is the *Itemized Statement* referenced above, a *Loan Transaction Details* report
that is a history of the charges and credits on the loan, a copy of the *Closed-End Fixed Rate Note*, the
*Closed-End Fixed Rate Home Equity Conversion Loan Agreement*, and the *Deed or Closed-End Fixed
Rate Home Equity Mortgage* that verifies the debt (**Attachment B**).

If either you or 〽️L  aud have a specific loan servicing issue, such as a payment application or a
disbursement issue, please feel free to send that information to the address below with a detailed
explanation as to why you feel the account is in error:

<div align="center">

Financial Freedom
**Mail Stop FF-01**
P.O. Box 85400
Austin, Texas 78708

</div>

You have the right to request additional copies of the enclosed documents we used to determine that
an error did not occur on  〽️L  d's account. To obtain copies of these documents, you must send
a specific written request for this information to the above-listed address. The written request must
include the customer's name and the loan number.

If you have any questions regarding this letter, please contact me via email at Kelly.Pruitt@cit.com or
by telephone at (866) 363-3091 Ext. 6766. I am available Monday through Friday, 8:00 a.m. to 5:00
p.m. Central Time.

Respectfully,

Kelly Pruitt
Default Escalation Specialist
Financial Freedom,
a division of CIT Bank, N.A.

Enclosures

*This is a communication from a debt collector attempting to collect a debt. Any information obtained will be used for that
purpose. However, if a bankruptcy petition has been filed and there is either an "automatic stay" in effect in the
bankruptcy case, or the debt has been discharged pursuant to the bankruptcy laws of the United States, this
communication is intended solely for informational purposes. If your debt has been discharged, this letter is for the sole
purpose of protecting a lien interest in the underlying mortgaged property and is not an attempt to recover any amounts
from you personally. The foregoing notice has no effect on any bankruptcy plan, and you should continue to make any
payments thereunder. If you have any questions about this notice, you should consult with your bankruptcy attorney
and/or your bankruptcy trustee.*

# Exhibit E

## Corrine Lincoln

| | |
|---|---|
| **From:** | Lainie Lowery <Lainie.Lowery@floridahousing.org> |
| **Sent:** | Monday, August 29, 2016 9:01 AM |
| **To:** | Corrine Lincoln |
| **Subject:** | RE:        Jd |

Good Morning,

We have received $13,656.87 that will be applied to   ELMORE loan balance.

Lainie Lowery
HHF Program Manager
Florida Housing Finance Corporation
227 N Bronough Street, Suite 5000
Tallahassee, FL 32301
(850) 488-4197

**From:** Corrine Lincoln [mailto:CLincoln@LegalAid.org]
**Sent:** Friday, August 26, 2016 5:21 PM
**To:** Lainie Lowery <Lainie.Lowery@floridahousing.org>
**Subject:** FW

Good afternoon,

Can you please confirm whether FHFC received the deposit of $14,058.21 from Financial Freedom. I need the confirmation in order to close the file.

Thanks

Corrine E. Lincoln, Esq | Staff Attorney
Coast to Coast Legal Aid of South Florida, Inc.
491 N. State Rd. 7 | Second Floor | Plantation, FL 33317
Tel: (954) 736-2441 | Fax: (954) 736-2482
clincoln@legalaid.org | www.coasttocoastlegalaid.org
Visit CCLA on: Facebook | Twitter | YouTube | Donate Online

CONFIDENTIALITY NOTICE: This email is ONLY for the person(s) named in the message header. Unless otherwise indicated, it contains information that is confidential, privileged or exempt from disclosure under applicable law. If you have received it in error, please notify the sender of the error and delete the message. Thank you.

**From:** Lainie Lowery [mailto:Lainie.Lowery@floridahousing.org]
**Sent:** Tuesday, July 05, 2016 10:58 AM

1



**To:** Corrine Lincoln
**Subject:** RE: !

It appears to be $14,058.21. I have not received them yet. I emailed requesting an update on the deposit though.

Lainie Lowery
HHF Program Manager
Florida Housing Finance Corporation
227 N Bronough Street, Suite 5000
Tallahassee, FL 32301
(850) 488-4197

**From:** Corrine Lincoln [mailto:CLincoln@LegalAid.org]
**Sent:** Tuesday, July 05, 2016 10:43 AM
**To:** Lainie Lowery <Lainie.Lowery@floridahousing.org>
**Subject:** F `·

Excellent news! Do you know how much money they will be returning?

Corrine E. Lincoln, Esq | Staff Attorney
Coast to Coast Legal Aid of South Florida, Inc.
491 N. State Rd. 7 | Second Floor | Plantation, FL 33317
Tel: (954) 736-2441 | Fax: (954) 736-2482
clincoln@legalaid.org | www.coasttocoastlegalaid.org
Visit CCLA on: Facebook | Twitter | YouTube | Donate Online

  

*CONFIDENTIALITY NOTICE: This email is ONLY for the person(s) named in the message header. Unless otherwise indicated, it contains information that is confidential, privileged or exempt from disclosure under applicable law. If you have received it in error, please notify the sender of the error and delete the message. Thank you.*

**From:** Lainie Lowery [mailto:Lainie.Lowery@floridahousing.org]
**Sent:** Tuesday, July 05, 2016 8:52 AM
**To:** Corrine Lincoln
**Subject:** RE:

Yes. I heard back from them. They picked up one of the numbers twice and will be returning the excess funds.

We always pay an additional amount to the servicer to cover another year of property charges.

Lainie Lowery
HHF Program Manager
Florida Housing Finance Corporation
227 N Bronough Street, Suite 5000
Tallahassee, FL 32301
(850) 488-4197

Good afternoon Lainie,

I sent a Notice of Error to Financial Freedom concerning the funds requested from ELMORE to reinstate Ms. Renaud's account. Financial Freedom's response is attached. After reading this response it is my understanding that it directly contradicts the amount of funds FF requested from ELMORE to reinstate the loan. I would like to share this response with counsel for Florida Housing Finance Corporation for further review.

Corrine E. Lincoln, Esq | Staff Attorney
Coast to Coast Legal Aid of South Florida, Inc.
491 N. State Rd. 7 | Second Floor | Plantation, FL 33317
Tel: (954) 736-2441 | Fax: (954) 736-2482
clincoln@legalaid.org | www.coasttocoastlegalaid.org
Visit CCLA on: Facebook | Twitter | YouTube | Donate Online

  

*CONFIDENTIALITY NOTICE: This email is ONLY for the person(s) named in the message header. Unless otherwise indicated, it contains information that is confidential, privileged or exempt from disclosure under applicable law. If you have received it in error, please notify the sender of the error and delete the message. Thank you.*

**From:** Lainie Lowery [mailto:Lainie.Lowery@floridahousing.org]
**Sent:** Thursday, March 31, 2016 10:12 AM
**To:** Corrine Lincoln
**Subject:** RE:

Here is the breakdown we were provided.



16953.21                    1648.17                    14583.21

Lainie Lowery
HHF Program Manager
Florida Housing Finance Corporation
227 N Bronough Street, Suite 5000
Tallahassee, FL 32301
(850) 488-4197

**From:** Corrine Lincoln [mailto:CLincoln@LegalAid.org]
**Sent:** Thursday, March 31, 2016 10:06 AM

4

**To:** Lainie Lowery <Lainie.Lowery@floridahousing.org>
**Subject:**

Good morning Laine,

····· was approved for ELMORE funds in the amount of $36,134.83. According to the Approval Letter, $33,184.59 has been advanced on her behalf for delinquent property charges and $2,95024 has been set aside for anticipated property taxes and insurance.  According to the client she recently called Financial Freedom and was told that she owed approximately $18,000.00 in delinquent property charges.  Are you able to provide a breakdown of what charges were included in the $3,184.59 paid on behalf of client.

The information release is attached.

Thanks a bunch

Corrine E. Lincoln, Esq | Staff Attorney
Coast to Coast Legal Aid of South Florida, Inc.
491 N. State Rd. 7 | Second Floor | Plantation, FL 33317
Tel: (954) 736-2441 | Fax: (954) 736-2482
clincoln@legalaid.org  | www.coasttocoastlegalaid.org
Visit CCLA on: Facebook | Twitter | YouTube | Donate Online

  

*CONFIDENTIALITY NOTICE: This email is ONLY for the person(s) named in the message header. Unless otherwise indicated, it contains information that is confidential, privileged or exempt from disclosure under applicable law. If you have received it in error, please notify the sender of the error and delete the message. Thank you*



Hardest Hit Fund Approval Letter

Date: 2/25/16

Dear:   ⊖A.

Congratulations!  You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $30,670.94 ____ in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds.  The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $28115.56_____ plus one year of anticipated property tax and/or insurance payments in the amount of $2,555.38_____.  The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage.  These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan. In the event of a conflict, the terms and conditions of the loan documents will control.

Florida HHF-ELMORE Approval Letter (09-2015)

Exhibit 11

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to
receive and the requirements that you must meet in order to receive assistance under the program
by signing below. If at any time it is determined that you provided inaccurate or false
information, or withheld information, in making application for assistance under the Florida
Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

Date: _____
Borrower

_____ Date: _____
Co-Borrower

FHFC Loan # 34780

## FLORIDA HOUSING FINANCE CORPORATION
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## SUMMARY DISCLOSURE OF LOAN TERMS

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**     Up to $50,000.00.

**Interest Rate:**     0%

**Term of Loan:**     Two years.

Elmore Loan Disclosure (New 09-2015) – Elderly Mortgage Assistance (Elmore) Program - Florida Hardest Hit Fund (HHF) Program

**Forgivable:**        The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:**        If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:**        The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**        No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

**HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.**

I/We acknowledge receipt of this Summary Disclosure of Loan Terms.

_____        Date: _____
**BORROWER**
Print

_____        Date: _____
**BORROWER**
Print name: _____

**PROMISSORY NOTE**
**FLORIDA HOUSING FINANCE CORPORATION**
**FLORIDA HARDEST HIT FUND (HHF) PROGRAM**
**ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM**

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

**Date of this Note:** _____2/25/2016_____          FHFC Loan # __34780_____

"**Property**" means the Borrower's residence located at:

_____          _____          _____          _____
        Street Address                            City                    State           Zip Code

"**First Mortgage Loan**" means the loan evidenced by the mortgage encumbering the Property dated
_____07/23/2008_____ given by _____World Alliance Financial Corp._____ to
_____ as recorded in Official Records Book __45595__, page __290__, or
under clerk's instrument # _____, of the public records of _____Broward_____
County, Florida.

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or so much thereof as may be advanced pursuant the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida  32301-1329.  The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $50,000.00 as provided in Section 2. below.

**2.    THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM**

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $50,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $50,000.00.

## 3.    INTEREST

The interest on this Note shall be zero percent (0%) per annum.

## 4.    REPAYMENT

(A)    I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)    I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

## 5.    FORGIVENESS.

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

## 6.    BORROWER'S PAYMENT BEFORE PAYMENT IS DUE

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

## 7.    DEFAULT

(A)    **Default.** I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)     **Notice of Default.** If I am in default, the Lender may, but is not required to, send me a written notice.

(C)     **No Waiver by Lender.** Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)     **Payment of Lender's Costs and Expense.** If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

### 8.     MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

### 9.     BORROWER'S WAIVERS

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

### 10.     GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above.  A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above.  A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

### 11.     RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

## 12.    LIMITS ON PERSONAL LIABILITY

(A)    Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)    The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

## 13.    HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW

(A)    The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B)    If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C)    No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D)    This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

## 14.    ATTACHMENTS

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

## PROMISSORY NOTE SIGNATURE PAGE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

### NOTICE TO BORROWER
### DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.
### ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

### SIGN ORIGINAL ONLY.

**BORROWER**
**Print Name·** S·A

**BORROWER**
**Print Name:**

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

FHFC Loan # 34780

## RIDER TO PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.**

A.   **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.   **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

Page 1

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C.  **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D.  **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E.  **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this ___ day of _Febuary_ 201_6_

_____
Borrower
Print nam   S. P

_____
Borrower
Print name: _____

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program .
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301·

PHFC Loan # 34780

## SUBORDINATE MORTGAGE
### (WITH DUE ON SALE OR REFINANCE CLAUSE)

**FLORIDA HOUSING FINANCE CORPORATION**
**FLORIDA HARDEST HIT FUND (HHF) PROGRAM**
**ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM**

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

THIS SUBORDIN~~ATE MORTGAGE (this "Mortgage")~~ is made this 25th day of ____February____, 20 16 , by _____ SK _____ (herein, the "Borrower") whose address is _____ (this address is Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as evidenced by the mortgage dated ____07/23/2009____ from ____World Alliance Financial Corp.____ to ____ SK ____ in the original principal amount of $ 306,000.00 ____ and recorded in OR Book _____, 'age __290__, or under clerk's instrument # _____, of the public records of _____ Broward _____ County, Florida.

This Mortgage is subordinate to the First Mortgage.

**TO SECURE** to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of _____ Broward _____, State of Florida (insert legal description):

### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

**TOGETHER** with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

"Home."

     **BORROWER COVENANTS** represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

     **PROVIDED ALWAYS** that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

     **BORROWER FURTHER COVENANTS** and agrees with Lender as follows:

     **1.**     **Payment.** Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

     **2.**     **Funds for Taxes and Insurance.** Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

     **3.**     **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

     **4.**     **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

     **5.**     **Liability and Hazard Insurance.** Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

     **6.**     **Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

     **7.**     **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

     **8.**     **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

     **9.**     **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

     **10.**     **Borrower Not Released; Forbearance by Lender Not a Waiver.** No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

     **11.**     **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements and references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms

2

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

12.     Notice. Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

13.     Governing Law; Severability; Costs. The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.     Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

15.     Acceleration; Remedies. Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

16.     Borrower's Right to Reinstate. Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

17.     Release. Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

18.     Subordination. Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

19.     Attorneys' Fees. As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

20.     Special Provisions.

(a)     Default. In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

(b)     Mortgage Not Assumable. This mortgage cannot be assumed.

(c)     Due on Sale or Refinance Clause. Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale, and, in the case of a refinance, only to the extent of any cash back to the Borrower.  As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan.  If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

3

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

(d) **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

IN WITNESS WHEREOF, Borrower has executed this Mortgage on the date first above written.

NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

Witnesses:

Print name: GLADYS GERSON

Print name: CARLA GARDNER

Print nam:

Print name: _____ Borrower

Witnesses:

Print name: _____

Print name: _____

Print name: _____ Borrower

Print name: _____

STATE OF FLORIDA
COUNTY OF Broward

The foregoing _____ acknowledged before me this 29 day of February, 2016 by _____ and _____. Such person(s) is (are)
(check one) ____ personally known to me or ✓ produced _____ 's license(s) as identification. A 530 -792-43 830 0

Notary Public, State of Florida
Print Name: Corvine Lincoln
Commission No.: FEE 221628
Commission Expires: August 1, 2016

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

# Exhibit F



**ELMORE**
ELDERLY MORTGAGE ASSISTANCE PROGRAM
FLORIDA HARDEST-HIT FUND

Hardest Hit Fund Approval Letter

Date: 4/1/16

Dear:      B, F

Congratulations!  You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $43,022.84_____ in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds.  The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $39246.71_____ plus one year of anticipated property tax and/or insurance payments in the amount of $3,776.13_____.  The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage.  These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan.  In the event of a conflict, the terms and conditions of the loan documents will control.

Florida HHF-ELMORE Approval Letter (09-2015)

Exhibit F

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to
receive and the requirements that you must meet in order to receive assistance under the program
by signing below. If at any time it is determined that you provided inaccurate or false
information, or withheld information, in making application for assistance under the Florida
Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

_____ Date: _____
Borrower

_____ Date: _____
Co-Borrower

FHFC Loan # 37193

## FLORIDA HOUSING FINANCE CORPORATION
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST
## HIT FUND (HHF) PROGRAM
## SUMMARY DISCLOSURE OF LOAN TERMS

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**      Up to $50,000.00.

**Interest Rate:**      0%

**Term of Loan:**      Two years.

Elmore Loan Disclosure (New 09-2015) – Elderly Mortgage Assistance (Elmore) Program - Florida Hardest Hit Fund (HHF) Program

**Forgivable:** The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:** If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:** The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:** No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

**HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.**

**I/We acknowledge receipt of this Summary Disclosure of Loan Terms.**

_____     Date: _____
**BORROWER**
Print name: _____

_____     Date: _____
**BORROWER**
Print name: _____

**PROMISSORY NOTE**
**FLORIDA HOUSING FINANCE CORPORATION**
**FLORIDA HARDEST HIT FUND (HHF) PROGRAM**
**ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM**

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

**Date of this Note:** _____4/1/2016_____          FHFC Loan # 37193_____

"**Property**" means the Borrower's residence located at:

_____          _____FL____  __ __
          Street Address                    City          State       Zip Code

"**First Mortgage Loan**" means the loan evidenced by the mortgage encumbering the Property dated _____09/29/2005___ _ given by _____Financial Freedom Senior Funding Corporation_____ to _____ as recorded in Official Records Book __40751__ , page __1514__ , or under clerk's instrument # _____, of the public records of _____Broward_____ County, Florida.

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or so much thereof as may be advanced pursuant the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329. The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $50,000.00 as provided in Section 2. below.

### 2.    THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $50,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $50,000.00.

## 3.    INTEREST

The interest on this Note shall be zero percent (0%) per annum.

## 4.    REPAYMENT

(A)    I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)    I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

## 5.    FORGIVENESS.

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

## 6.    BORROWER'S PAYMENT BEFORE PAYMENT IS DUE

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

## 7.    DEFAULT

(A)    **Default.** I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)     **Notice of Default**. If I am in default, the Lender may, but is not required to, send me a written notice.

(C)     **No Waiver by Lender.** Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)     **Payment of Lender's Costs and Expense.** If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

## 8.     MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

## 9.     BORROWER'S WAIVERS

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

## 10.    GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above. A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

## 11.    RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

## 12.   LIMITS ON PERSONAL LIABILITY

(A)    Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)    The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

## 13.   HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW

(A)    The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B)    If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C)    No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D)    This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

## 14.   ATTACHMENTS

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

<u>PROMISSORY NOTE SIGNATURE PAGE</u>
**FLORIDA HOUSING FINANCE CORPORATION**
**FLORIDA HARDEST HIT FUND (HHF) PROGRAM**
**ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM**

**NOTICE TO BORROWER**
**DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.**
**ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.**

**SIGN ORIGINAL ONLY.**

**BORROWER**
**Print Name:** _____

**BORROWER**
**Print Name:** _____

FHFC Loan # 37193

## RIDER TO PROMISSORY NOTE
### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.**

A.  **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.  **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

Page 1

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C.   **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D.   **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E.   **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this _____ day of _____, 201__

---
Borrower
Print name:

---
Borrower
Print name:

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # 37193

## SUBORDINATE MORTGAGE
### (WITH DUE ON SALE OR REFINANCE CLAUSE)

### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

THIS SUBORDINATE MORTGAGE (this "Mortgage") is made this 1st day of April , 20 16 , by _____ (herein, the "Borrower") whose address is _____ , 33311 (this address is Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as evidenced by the mortgage dated 09/29/2005 from Financial Freedom Senior Funding Corporation to _____ in the original principal amount of $ 270,000.00 and recorded in OR Book 40751 , Page 1514 , or under clerk's instrument # _____ , of the public records of Broward County, Florida.

This Mortgage is subordinate to the First Mortgage.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of Broward , State of Florida (insert legal description):

### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

---

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

"Home."

    **BORROWER COVENANTS** represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

    **PROVIDED ALWAYS** that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

    **BORROWER FURTHER COVENANTS** and agrees with Lender as follows:

    **1.**    **Payment.** Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

    **2.**    **Funds for Taxes and Insurance.** Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

    **3.**    **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

    **4.**    **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

    **5.**    **Liability and Hazard Insurance.** Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

    **6.**    **Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

    **7.**    **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

    **8.**    **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

    **9.**    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

    **10.**    **Borrower Not Released; Forbearance by Lender Not a Waiver.** No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

    **11.**    **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements and references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms

<div align="center">2</div>

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

**12.** **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

**13.** **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14.** **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

**15.** **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

**16.** **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

**17.** **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

**18.** **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

**19.** **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

**20.** **Special Provisions.**

(a) **Default.** In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

(b) **Mortgage Not Assumable.** This mortgage cannot be assumed.

(c) **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale and, in the case of a refinance, only to the extent of any cash back to the Borrower. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan. If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

3

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

     (d)    **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

**IN WITNESS WHEREOF**, Borrower has executed this Mortgage on the date first above written.

**NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.**

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Witnesses:

Print name: _____

Print name _____

Print name: _____

Witnesses:

Print name: _____

Borrower

Print name: _____

Print name: _____

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me this ____ day of _____, 20__, by _____ and _____. Such person(s) is (are) (check one) ____ personally known to me or ____ produced valid driver's license(s) as identification.

Notary Public, State of Florida
Print Name: _____
Commission No.: _____
Commission Expires: _____

4

# Exhibit G

INSTR # 113743480 Page 1 of 5, Recorded 06/08/2016 at 04:59 PM
Broward County Commission, Deputy Clerk ERECORD

**** FILED: BROWARD COUNTY, FL Howard C Forman, CLERK 6/7/2016 11:26:26 AM ****

IN THE FLORIDA COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT OF
FLORIDA IN AND FOR BROWARD COUNTY
GENERAL JURISDICTION DIVISION
CASE NO: CACE15020377

REVERSE MORTGAGE SOLUTIONS, INC.,
        Plaintiff,

vs.

LENA A. REID A/K/A LENA REID; UNKNOWN
SPOUSE OF LENA A. REID A/K/A LENA REID;
UNITED STATES OF AMERICA, ON BEHALF
OF THE SECRETARY OF HOUSING AND
URBAN DEVELOPMENT; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY,
THROUGH, UNDER, AND AGAINST THE
HEREIN NAMED INDIVIDUAL
DEFENDANT(S) WHO ARE NOT KNOWN TO
BE DEAD OR ALIVE, WHETHER SAID
UNKNOWN PARTIES MAY CLAIM AN
INTEREST AS SPOUSES, HEIRS, DEVISEES,
GRANTEES, OR OTHER CLAIMANTS,
        Defendant(s).

_____/

## CONSENT IN REM FINAL JUDGMENT OF FORECLOSURE

This action was tried before the court at a Non-Jury Trial on June 7, 2016. On the
evidence presented, **IT IS ADJUDGED** that Plaintiff's Final Judgment is **GRANTED** in favor
of Plaintiff and against all defendants listed by name: LENA A. REID A/K/A LENA REID;
UNITED STATES OF AMERICA, ON BEHALF OF THE SECRETARY OF HOUSING AND
URBAN DEVELOPMENT;

1. **Amounts Due.** Plaintiff, REVERSE MORTGAGE SOLUTIONS, INC., whose address is c/o
   Reverse Mortgage Solutions, Inc., 14405 Walters Road, Houston, TX 77014, is due:

| | |
|---|---|
| Principal | $113,302.08 |
| Interest on Note and Mortgage to June 7, 2016 | $713.65 |
| Accrued MIP | $69.84 |
| Corp Advances | $5,005.26 |
| SUBTOTAL | $119,090.83 |

15-066077 - EmE
CACE15020377

Page 1 of 9

EXHIBIT K

EXHIBIT A

Attorneys' Fees:
   Finding as to reasonable number of hours: 10.00
   Finding as to reasonable hourly rate: $175.00
   Finding as to reasonable number of hours: 2.00
   Finding as to reasonable hourly rate: $215.00
   Flat Fee: $2,800.00
   Attorneys' Fee Total:           **$4,980.00**
Court Costs, now taxed:
   Filing Fee:           **$934.08**
   Service of Process:      **$180.00**

**TOTAL SUM**           **$125,184.91**

That shall bear interest at a rate in accordance with section 55.03(3), Florida Statute

2. **Lien on Property.** Plaintiff holds a lien for the total sum superior to all claims or estates of defendant(s), on the following described property in Broward County, Florida:

> **LOT 7, BLOCK 3, OF LAUDERDALE LAKES WESTGATE SECTION NO. 3, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 53, PAGE 10, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**
>
> **<u>Property Address:</u> 4420 N.W. 30TH STREET, LAUDERDALE LAKES , FL 33313**

3. **Sale of Property.** If the total sum with interest at the rate described in paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of this Court shall sell the property at public sale on the ___6___ day of ___September___, 20_16_ , *no sooner than 45 days from the of this judgment,* to the highest bidder for cash, except as prescribed in paragraph 4, at the courthouse located at 201 SE 6TH STREET, FORT LAUDERDALE, FL 33301 in Broward County, Florida, in accordance with section 45.031, Florida Statutes (2013), using the following method:

    ☒ www.broward.realforeclose.com beginning at 10:00 AM

4. **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title. If plaintiff is the purchaser, the clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it as is necessary to pay the bid in full.

15-066077 - EmE
CACE15020377

INSTR # 113743480   Page 3 of 5

5. **Distribution of Proceeds.** On filing the certificate of title the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of plaintiff's costs; second, documentary stamps affixed to the certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 1 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this court.

6. **Right of Redemption/Right of Possession.** On filing the certificate of sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, and defendant(s) right of redemption as prescribed by section 45.0315, Florida Statues (2013) shall be terminated, except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the property.

7. **Attorneys' Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that the flat fee of $2,800.00 is reasonable and appropriate for the Plaintiff's counsel's attorney's fees. Furthermore, the Court finds, based upon the affidavits presented and upon inquiry of counsel for the Plaintiff, that 12.00 hours were reasonably expended by Plaintiff's counsel and that an hourly rate of $175.00 and $215.00 is appropriate. PLAINTIFF'S COUNSEL CERTIFIES THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH PLAINTIFF. The Court finds that there are no reasons for either reduction or enhancement pursuant to *Florida Patient's Compensation Funds v. Rowe*, 472 So. 2d 1145 (Fla. 1985), and the Court therefore has awarded reasonable attorney's fees in the amount indicated in paragraph 1 of this Judgment.

8. **Jurisdiction is further reserved to enter Orders that are proper, including without limitation, writs of possession, and leave to file supplemental and amended pleadings and complaints to add omitted counts and/or parties who may possess an interest in the property and to resolve any disputes with respect to assessments and/or other amount allegedly due associations. The Judgment is in rem only. Plaintiff is not seeking a deficiency or money judgment against any defendant to this action.**

9. The United States of America shall have the right of redemption provided by 28 U.S.C. §2410(c) and, if it is the successful bidder at the foreclosure sale, it shall be allowed thirty (30) days to deliver a Treasury check to the Clerk of Court in payment of the amount of its bid. Further, the deposit required by Florida Statutes 45.021(2) shall be waived.

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO**

15-068077 - EmE
CACE15020377

INSTR # 113743480 Page 4 of 5

ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 201 SE 6TH STREET, FORT LAUDERDALE, FL 33301, WITHIN 10 DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT COAST TO COAST LEGAL AID OF SOUTH FLORIDA, INC., 491 N STATE ROAD 7, PLANTATION, FL 33317, PHONE: 954-736-2400 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT COAST TO COAST LEGAL AID OF SOUTH FLORIDA, INC. FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

ORDERED at FORT LAUDERDALE, BROWARD COUNTY, FLORIDA this ___

day of _____ . 20/6

HONORABLE PRESIDING JUDGE

16-056077 - EmE
CACE16020377

T Kim Stevens 054313
D BERBETH FOSTER 83375

Page 4 of 9

INSTR # 113743480    Page  5 of 5, End of Document

COPIES FURNISHED TO:

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
ATTORNEYS FOR PLAINTIFF
6409 CONGRESS AVE., SUITE 100
BOCA RATON, FL 33487
PRIMARY EMAIL: MAIL@RASFLAW.COM

COAST TO COAST LEGAL AID OF SOUTH FLORIDA, INC.
BERBETH S. FOSTER, ESQ.
ATTORNEY FOR LENA A. REID A/K/A LENA REID
491 N. STATE ROAD 7
PLANTATION, FL 33317
PRIMARY EMAIL: BFOSTER@LEGALAID.ORG
SECONDARY EMAILS: SENIORLAWPROJECT@LEGALAID.ORG

UNITED STATES OF AMERICA, ON BEHALF OF THE SECRETARY OF HOUSING AND
URBAN DEVELOPMENT
C/O UNITED STATES ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF
FLORIDA
99 NE 4TH STREET
MIAMI, FL 33132
PRIMARY EMAIL: USAFLS.2410@USDOJ.GOV

15-066077 - EmE
CACE15020377

# Exhibit H



# Exhibit I



**ELMORE**
FLORIDA HARDEST HIT FUND

Hardest Hit Fund Approval Letter

Date: 6/30/16

Dea      L.R

Congratulations!  You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $ 14,344.04____ in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds.  The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $ 10234.38_____ plus one year of anticipated property tax and/or insurance payments in the amount of $ 4,109.65_____.  The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage.  These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan.  In the event of a conflict, the terms and conditions of the loan documents will control.

EXhibit J

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to receive and the requirements that you must meet in order to receive assistance under the program by signing below. If at any time it is determined that you provided inaccurate or false information, or withheld information, in making application for assistance under the Florida Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

_____ Date: _7 - 6 -16_____
Borrower

_____ Date: _____
Co-Borrower

FHFC Loan # 84570

**FLORIDA HOUSING FINANCE CORPORATION**
**ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST**
**HIT FUND (HHF) PROGRAM**
**SUMMARY DISCLOSURE OF LOAN TERMS**

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**    Up to $50,000.00.

**Interest Rate:**    0%

**Term of Loan:**    Two years.

**Forgivable:**          The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:**          If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:**          The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**          No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

**HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.**

**I/We acknowledge receipt of this Summary Disclosure of Loan Terms.**

Date: 7.6.16
_____
**BORROWER**
Print name

Date: _____
_____
**BORROWER**
Print name: _____

### PROMISSORY NOTE
### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

**Date of this Note:**      6/30/2016                          FHFC Loan # 84570

**"Property"** means the Borrower's residence located at:

_____                          ...          _____
        Street Address                    City            State

**"First Mortgage Loan"** means the loan evidenced by the mortgage encumbering the Property dated
_____ 10/05/2011 _____ given by _____ L. P.          ' ' '              _____ to
_____          _____ as recorded in Or......... ......       ., page __1112__ , or
under clerk's instrument # _____ , of the public records of _____ Broward _____
County, Florida.

1.      **BORROWER'S PROMISE TO PAY**

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or so much thereof as may be advanced pursuant the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329. The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $50,000.00 as provided in Section 2. below.

2.      **THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM**

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES '

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $50,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $50,000.00.

## 3.    INTEREST

The interest on this Note shall be zero percent (0%) per annum.

## 4.    REPAYMENT

(A)    I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)    I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

## 5.    FORGIVENESS.

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

## 6.    BORROWER'S PAYMENT BEFORE PAYMENT IS DUE

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

## 7.    DEFAULT

(A)    **Default.** I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)     **Notice of Default.** If I am in default, the Lender may, but is not required to, send me a written notice.

(C)     **No Waiver by Lender.** Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)     **Payment of Lender's Costs and Expense.** If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

## 8.     MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

## 9.     BORROWER'S WAIVERS

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

## 10.     GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above. A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

## 11.     RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

Promissory Note - Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

**12.    LIMITS ON PERSONAL LIABILITY**

(A)    Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)    The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

**13.    HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW**

(A)    The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B)    If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C)    No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D)    This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

**14.    ATTACHMENTS**

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

Promissory Note - Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

PROMISSORY NOTE SIGNATURE PAGE
FLORIDA HOUSING FINANCE CORPORATION
FLORIDA HARDEST HIT FUND (HHF) PROGRAM
ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

NOTICE TO BORROWER
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.
ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

SIGN ORIGINAL ONLY.

BORROWER
Print Name:

BORROWER
Print Name:

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

FHFC Loan # 84570

## RIDER TO PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.**

A.  **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.  **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C.   **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D.   **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E.   **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this 5TH day of JULY , 2016

_____

Borrower
Print name   L ·R         _____

_____

Borrower
Print name:   _____

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # 84570

## SUBORDINATE MORTGAGE
### (WITH DUE ON SALE OR REFINANCE CLAUSE)

#### FLORIDA HOUSING FINANCE CORPORATION
#### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
#### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

THIS SUBORDINATE ~~~~~~ (this "Mortgage") is made this 30th day of _____ June _____, 20 16, by _____ (herein, the "Borrower") whose address is _____ (this address is _____ Property Address and shall be the Bor~~~~~ ~ ~~~~~~ .. , _____ y notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as evidenced by the mortgage dated _____ 10/05/2011 _____ from _____ One Reverse Mortgage, LLC. _____ in the original principal amount of $ 172,500.00 _____ and recorded in OR Book _____ 48240 _____, Page _____ 1112 _____, or under clerk's instrument # _____, of the public records of _____ Broward _____ County, Florida.

This Mortgage is subordinate to the First Mortgage.

**TO SECURE** to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of _____ Broward _____, State of Florida (insert legal description):

#### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

**TOGETHER** with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

---

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

---

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

"Home."

BORROWER COVENANTS represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

BORROWER FURTHER COVENANTS and agrees with Lender as follows:

1.    Payment. Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

2.    Funds for Taxes and Insurance. Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

3.    Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

4.    Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5.    Liability and Hazard Insurance. Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

6.    Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

7.    Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

8.    Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

9.    Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10.    Borrower Not Released; Forbearance by Lender Not a Waiver. No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted by Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.    Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements and references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms

2

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

12.    **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

13.    **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.    **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

15.    **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

16.    **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof; including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

17.    **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

18.    **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

19.    **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

20.    **Special Provisions.**

(a)    **Default.** In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

(b)    **Mortgage Not Assumable.** This mortgage cannot be assumed.

(c)    **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale, and, in the case of a refinance, only to the extent of any cash back to the Borrower. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan. If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

3

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

(d)     **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

**IN WITNESS WHEREOF**, Borrower has executed this Mortgage on the date first above written.

**NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.**

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Witnesses:

Print name: _CILLY SANDERS_

Print name: _ELIZABETH FOSTER_

Print name _____     Borrower _L.R._

Witnesses:

Print name: _____     Borrower

Print name: _____     Print name: _____

STATE OF FLORIDA
COUNTY OF _Broward_

_____ _____ ____ ____ _____ ____ acknowledged before me this _6_ day of _July_, 20_16_, by _____ and _____, Such person(s) is (are)

(check one) ____ personally known to me or ____ valid driver's license(s) as identification.   X 6800

Notary Public, State of Florida
Print Name: _Corrine Lincoln_
Commission No.: _8.1.16_
Commission Expires: _2 2628_

4

# Exhibit J

Broward County Commission,   Deputy Clerk ERECORD

**** FILED: BROWARD COUNTY, FL  Howard C. Forman,  CLERK 11/9/2016 4:41:26 PM.****

IN THE CIRCUIT COURT OF THE SEVENTEENTH
JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY,
FLORIDA
CIVIL ACTION

NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE
COMPANY,
    Plaintiff,

vs.

CASE NO.: CACE15020786
DIVISION:

PAULINE KENNEDY AKA PAULINE KENNEDY LEWIS; UNITED
STATES OF AMERICA ACTING THROUGH SECRETARY OF
HOUSING AND URBAN DEVELOPMENT; ANY AND ALL
UNKNOWN PARTIES CLAIMING BY, THROUGH, UNDER, AND
AGAINST THE HEREIN NAMED INDIVIDUAL DEFENDANT(S)
WHO ARE NOT KNOWN TO BE DEAD OR ALIVE, WHETHER
SAID UNKNOWN PARTIES MAY CLAIM AN INTEREST AS
SPOUSES, HEIRS, DEVISEES, GRANTEES, OR OTHER
CLAIMANTS; UNKNOWN PARTY #1, UNKNOWN PARTY #2,
UNKNOWN PARTY #3, AND UNKNOWN PARTY #4, THE NAMES
BEING FICTITIOUS TO ACCOUNT FOR PARTIES IN
POSSESSION,
    Defendant(s).

CONSENT
FINAL JUDGMENT OF FORECLOSURE

THIS ACTION was heard before the Court at the Non-Jury Trial held on November 9, 2016.  On the evidence presented,

IT IS ORDERED AND ADJUDGED that:

1.    The Plaintiff's Final Judgment is GRANTED.  Service of process has been duly and regularly obtained over, **Pauline Kennedy a/k/a Pauline Kennedy Lewis; United States of America Acting through Secretary of Housing and Urban Development**, defendants.

2.    There is due and owing to the Plaintiff the following:

| | |
|---|---:|
| Principal due on the note secured by the mortgage foreclosed: | $160,143.54 |
| Interest on the note and mortgage from October 7, 2007 to November 9, 2016 | $9,182.51 |
| MIP/PMI Insurance | $10,805.51 |
| County taxes | $725.01 |
| Hazard Insurance | $2,047.00 |
| | |
| Court Costs: | |
| Filing Fee | $953.50 |
| Service of Process | $245.00 |
| | |
| Additional Costs: | |
| Property Inspections | $343.00 |
| Service Fees | $3,420.00 |
| Appraisals | $440.00 |
| | |
| **GRAND TOTAL** | **$188,305.07** |

Exhibit M

3.      The grand total amount referenced in Paragraph 2 shall bear interest from this date forward at the prevailing legal rate of interest.

4.      Plaintiff, NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, whose address is c/o Champion Mortgage Company, 8950 Cypress Waters Blvd, Coppell, TX 75019, holds a lien for the grand total sum specified in Paragraph 2 herein. The lien of the Plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to Florida Statutes, Section 718.116 and Section 720.3085.  The Plaintiff's lien encumbers the subject property located in Broward County, Florida and described as:

**BEGINNING AT A POINT BEING THE SOUTHWEST CORNER OF THE NORTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SECTION 29, TOWNSHIP 49 SOUTH, RANGE 42 EAST; THENCE NORTHERLY ALONG THE WEST BOUNDARY OF SAID NORTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 FOR A DISTANCE OF 139.28 FEET; THENCE EASTERLY AND PARALLEL TO THE SOUTH BOUNDARY LINE OF SAID NORTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 FOR A DITANCE OF 52.61 FEET; THENCE SOUTHERLY AND PARALLEL TO THE WEST BOUNDARY LINE OF THE SAID NORTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 FOR A DISTANCE OF 139.25 FEET TO A POINT ON THE SOUTH BOUNDARY OF SAID NORTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4; THENCE WESTERLY FOR A DISTANCE OF 52.96 FEET TO THE SOUTHWEST CORNER OF THE NORTH 1/2 OF THE SOUTHEAST 1/4 OF THE NORHTEAST 1/4 OF SECTION 29, TOWNSHIP 49 SOUTH, RANGE 42 EAST, AND THE POINT OF BEGINNING; SAID LAND SITUATE, LYING AND BEING IN BROWARD COUNTY, FLORIDA.**

**Property address: 2340 NW 27TH ST., OAKLAND PARK, FL. 33311**

5.      If the grand total amount with interest at the rate described in Paragraph 3 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale to the highest bidder on **3 19 2019**, 20 **17**, at 10:00am, to the highest bidder for cash, except as prescribed in Paragraph 6, at Broward County's Public Auction website: www.broward.realforeclose.com , after having first given notice as required by Section 45.031, Florida Statutes. The Clerk shall not conduct the sale in the absence of the Plaintiff or its representative. 

6.      Plaintiff shall advance all subsequent costs of this action in addition to any advances to protect its collateral and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property for sale. If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

7.      On filing of the Certificate of Sale, defendant's right of redemption as prescribed by Florida Statutes, Section 45.0315 shall be terminated.

8.      On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the Plaintiff's costs; second, documentary stamps affixed to the Certificate; third, Plaintiff's attorneys' fees; fourth, the total sum due to the Plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 3 from this date to the date of the sale.  During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus pending further Order of this Court.

9.      Upon filing of the Certificate of Title, defendant and all persons claiming under or against defendant since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale shall be let into possession of the property.

10.     **NOTICE PURSUANT TO AMENDMENT TO SECTION 45.031, FLA. ST. (2006)**

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, BROWARD COUNTY CLERK OF COURT BROWARD COUNTY COURTHOUSE ATTN: FORECLOSURE 201 S E 6TH STREET, ROOM 230 FORT LAUDERDALE, FL 33301 BROWARD COUNTY CLERK OF COURTS, [TELEPHONE: 954-831-5745 - Foreclosure Line 954-831-6565 GENERAL NOTICE OF ACTIONS 954-831-5742 954-831-7770 Special Foreclosure Line 954-831-5659 - Court Registry - Funds], WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT LEGAL AID SERVICE OF BROWARD COUNTY INC., 491 N. STATE ROAD 7, PLANTATION, FL 33317 TELEPHONE: (954) 765-8950, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT FLORIDA RURAL LEGAL SERVICES, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

11.     If Plaintiff is the successful purchaser at the foreclosure sale, Plaintiff may assign the successful bid without further order of this court.

12.     The Court finds that Plaintiff has standing to seek and receive the relief obtained herein.

13.     Any funds payable from third party funds including attorney fees and costs shall be made payable to Plaintiff.

14.     Federal National Mortgage Association is the owner of the promissory note secured by the mortgage subject to this Final Judgment and the Court specifically reserves jurisdiction to enter further orders the Court deems just and proper to include, without limitation, the following: orders granting additional attorney's fees and costs; writs of possession; orders determining the amount and responsibility for assessments that may be due a condominium or homeowner's association pursuant to sections 718.116 or 720.3085 of the Florida Statues; orders arising out of re-foreclosure, to include permitting a supplemental complaint to add an interest-holder, and/or; orders involving reformation of the mortgage instrument or deed to perfect title.

15.     Defendants' Right of Redemption shall be terminated upon issuance of the Certificate of Sale as prescribed by Florida Statute §45.0315 Florida Statutes; except for that of the United States of America, which has 365 days to redeem. If the USA is a defendant for any other reason (i.e. Federal Tax Lien, etc.) the redemption period is 120 days not 365.

**ORDERED** at Broward County, Florida on _____ *N. o V. 9* , 20/6

_____
Circuit Judge

AB-15-194919

Copies furnished to:

Albertelli Law
P.O. Box 23028
Tampa, FL  33623
eService:  servealaw@albertellilaw.com

CACE15020786

Pauline Kennedy aka Pauline Kennedy Lewis
2340 NW 27th Street
Oakland Park, FL 33311

United States of America Acting through Secretary of Housing and Urban Development
c/o U.S. Attorney
99 Northeast 4th Street - 13th Floor
Miami, FL 33132
E-Serve 1:  usafls.2410@usdoj.gov

# Exhibit K



**ELMORE**
ELDERLY MORTGAGE ASSISTANCE PROGRAM
FLORIDA HARDEST HIT FUND

Hardest Hit Fund Approval Letter

Date: 11/15/16

Dear: P  P L

Congratulations!  You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $ 12,989.34 ____ in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds.  The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $ 9847.61 _____ plus one year of anticipated property tax and/or insurance payments in the amount of $ 3,141.73 _____.  The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage.  These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan.  In the event of a conflict, the terms and conditions of the loan documents will control.

EXhibit L

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to
receive and the requirements that you must meet in order to receive assistance under the program
by signing below. If at any time it is determined that you provided inaccurate or false
information, or withheld information, in making application for assistance under the Florida
Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

_____ Date: _____
Borrower

_____ Date: _____
Co-Borrower

FHFC Loan # 35088

## FLORIDA HOUSING FINANCE CORPORATION
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### SUMMARY DISCLOSURE OF LOAN TERMS

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**      Up to $50,000.00.

**Interest Rate:**      0%

**Term of Loan:**      Two years.

**Forgivable:**        The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:**        If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:**        The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**        No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

**HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.**

**I/We acknowledge receipt of this Summary Disclosure of Loan Terms.**

BORROWER
Print name

Date: _____

_____

Date: _____

**BORROWER**
Print name: _____

### PROMISSORY NOTE
### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

**Date of this Note:**   11/15/2016          FHFC Loan # 35088

**"Property"** means the Borrower's residence located at:

| | | | |
|---|---|---|---|
| Street Address | City | State | Zip Code |

**"First Mortgage Loan"** means the loan evidenced by the mortgage encumbering the Property dated          07/25/2007          given by          Countrywide Bank, FSB          to          $\mathcal{V}.\mathcal{L}$          as recorded in Official Records Book   44442  , page   656  , or under clerk's instrument #          , of the public records of          Broward          County, Florida.

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or so much thereof as may be advanced pursuant the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329. The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $50,000.00 as provided in Section 2. below.

### 2.   THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $50,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $50,000.00.

## 3. INTEREST

The interest on this Note shall be zero percent (0%) per annum.

## 4. REPAYMENT

(A)    I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)    I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

## 5. FORGIVENESS.

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

## 6. BORROWER'S PAYMENT BEFORE PAYMENT IS DUE

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

## 7. DEFAULT

(A)    **Default.** I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)     **Notice of Default.** If I am in default, the Lender may, but is not required to, send me a written notice.

(C)     **No Waiver by Lender.** Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)     **Payment of Lender's Costs and Expense.** If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

## 8.     MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

## 9.     BORROWER'S WAIVERS

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

## 10.     GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above. A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

## 11.     RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

## 12.   LIMITS ON PERSONAL LIABILITY

(A)     Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)     The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

## 13.   HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW

(A)     The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B)     If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C)     No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D)     This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

## 14.   ATTACHMENTS

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

## PROMISSORY NOTE SIGNATURE PAGE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

### NOTICE TO BORROWER
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.
ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

#### SIGN ORIGINAL ONLY.

**BORROWER**
Print Nam.

**BORROWER**
Print Name: _____

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

FHFC Loan # 35088

## RIDER TO PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.**

A.     **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.     **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev 09-2015)

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C. **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D. **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E. **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this 1⠒⠇ day of ⠞⠺⠑⠝⠞⠽ , 201⠇

_____
Borrower
Print na:

_____
Borrower
Print name: _____

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # 35088

## SUBORDINATE MORTGAGE
### (WITH DUE ON SALE OR REFINANCE CLAUSE)

### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

**THIS SUBORDINATE MORTGAGE** ("............ ... " is made this 15th day of ___November___, 20 16 , by _____ (herein, the "Borrower") whose address is _____ 1311 _____ (this address is Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as evidenced by the mortgage dated ___07/25/2007___ from ___Countrywide Bank, FSB___ in the original principal amount of $ 300,000.00 and recorded in OR Book ___44442___, Page ___036___, or under clerk's instrument # _____ , of the public records of ___Broward___ County, Florida.

This Mortgage is subordinate to the First Mortgage.

**TO SECURE** to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of _____Broward_____ , State of Florida (insert legal description):

### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

**TOGETHER** with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

"Home."

**BORROWER COVENANTS** represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

**PROVIDED ALWAYS** that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

**BORROWER FURTHER COVENANTS** and agrees with Lender as follows:

1. **Payment.** Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

2. **Funds for Taxes and Insurance.** Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Liability and Hazard Insurance.** Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance by Lender Not a Waiver.** No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements and references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms

2

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

**12.** **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

**13.** **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14.** **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

**15.** **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

**16.** **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

**17.** **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

**18.** **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

**19.** **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

**20.** **Special Provisions.**

(a) **Default.** In addition to any other event of default under this Mortgage, Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

(b) **Mortgage Not Assumable.** This mortgage cannot be assumed.

(c) **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale, and, in the case of a refinance, only to the extent of any cash back to the Borrower. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan. If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

3

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

(d)    **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

IN WITNESS WHEREOF, Borrower has executed this Mortgage on the date first above written.

NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

Witnesses:

Print name: _____

Print name: _____

Print name: _____          Borrower
                                             Print name: _____

Witnesses:

Print name: _____

Print name: _____          Borrower
                                             Print name: _____

Print name: _____

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me this ____ day of _November_ 20___ by _Paul NE Kennedy Lewis_ and _____. Such person(s) is (are) (check one) _____ personally known to me or _✓_ produced valid driver's license(s) as identification.

Notary Public, State of Florida
Print Name: _Lisa G. Goldberg_
Commission No.: _EE 857262_
Commission Expires: _April 8, 2017_

LISA G. GOLDBERG
MY COMMISSION # EE 857262
EXPIRES: April 8, 2017
Bonded Thru Notary Public Underwriters

4

# Exhibit L

TPE REVERSE MORTGAGE SPECIALIST*

Au    , TX 78758
Telephone: 1-866-727-4303♦Fax: 1-866-574-0094

July 21, 2015

W R

Lauoc._

**RE:** Home Equity Conversion Mortgage
Borrower:    W M
 Property Address: ⸀
          ("Property")
 FHA Case No.:   vestor No.:
 Financial Freedom Loan No.:

## Property Charge Delinquency Letter

---
### IMPORTANT: ***YOU MUST TAKE ACTION BY 8/14/2015***
---

Dear

### AS A RESULT OF YOUR FAILURE TO PAY REQUIRED PROPERTY CHARGES, YOUR REVERSE MORTGAGE IS IN DEFAULT AND COULD BE CALLED DUE AND PAYABLE.

As explained and agreed to in your reverse mortgage loan documents, you are obligated to pay your taxes, hazard insurance premiums, ground rents, and assessments ("Property Charges") timely. Our records indicate that you have failed to pay Property Charges in the amount of **$1779.04** and your loan servicer, Financial Freedom, a division of OneWest Bank N.A.® ("Financial Freedom") was required to pay that amount on your behalf. You are responsible for repaying **$1779.04**, which is calculated based on the actual amount we disbursed to pay these Property Charges, less any available line of credit on your loan balance at the time of the disbursement(s). Since your loan is insured by the Department of Housing and Urban Development ("HUD"), we are required to service your loan according to HUD guidelines. As a result of this failure to pay all Property Charges:

 (i) Because your loan is insured by HUD, should you fail to pay the repayment amount of **$1779.04 in full** by 8/14/2015, Financial Freedom would be required by HUD regulations to submit your loan to HUD to be called "due and payable." HUD, not Financial Freedom, determines whether to call your loan due and payable. If HUD calls your loan due and payable, your loan will remain in due and payable status until you pay the amount of **$1779.04** in full.

 (ii) If HUD calls your loan due and payable, after your loan enters due and payable status, you may be subject to foreclosure proceedings and you could ultimately lose your home. If you are unable to repay the amount of **$1779.04** by 8/14/2015, you may be eligible to make alternative arrangements, **as set forth below**, but it is important that you act quickly.

*FF Form 80406-3 ≥80*
*Version 001-6/2015*
*Page 1 of 7*




THE REVERSE MORTGAGE SPECIALISTS

At ., TX 78758
Telephone: 1-866-727-4303♦Fax: 1-866-574-0094

**Our preference is to work out a solution that will allow you to repay all balances due and allow you to retain possession of your home.**

**Below are the options that HUD allows you to take to avoid foreclosure. If you do not comply with one of these options, Financial Freedom will be obligated to institute foreclosure proceedings in accordance with HUD guidelines. Please read these carefully:**

1. Proof of Payment or Insurance Coverage: Provide proof that you have paid the Property Charges. Such proof may include a receipt from your taxing authority, a cancelled check, or proof of hazard insurance coverage. If we do not receive proof by **8/14/2015** at the address listed above, Financial Freedom will be obligated to submit a request to HUD to call your loan due and payable.

2. Repayment of Property Charges: Repay the total amount of **$1779.04** of Property Charges that were paid on your behalf. If we do not receive a repayment by **8/14/2015**, Financial Freedom is obligated by HUD regulations to submit a request to HUD to call your loan due and payable. Please remit payment by certified check, money order, or personal check to the address listed above.

3. Housing Assistance Programs: Your State is participating in a Hardest Hit Fund Program called **ELMORE**. This program may provide assistance to help address the **$1779.04**. Please contact us to help get the review started.

4. Repayment Plan: You may qualify for a repayment plan, which could allow the **$1779.04** in unpaid Property Charges to be repaid in monthly installments over time. In order to find out if you qualify for this option, you must complete the attached financial information form and either mail it to Financial Freedom at the address listed above or fax it to          1-866-574-0094, **as soon as possible**.

5. Extension for Unique Circumstances: If the youngest living borrower is 80 years of age or older and you (or another borrower on the loan) have unique circumstances that require you to remain in your home, such as a supported terminal illness, substantiated long-term physical disability or a "unique" occupancy need (*e.g.*, terminal illness of family member receiving care at the residence), you may be eligible for additional options that could allow you to retain possession of your home. **Please be aware that HUD, not Financial Freedom, has the sole and exclusive discretion to determine whether you qualify for this option and reserves the right to require Financial Freedom to proceed to foreclosure.** If you believe that you may qualify for this option, you **must** complete and sign the attached Request for Extension of Time and Certification of Critical Circumstances form, and either mail it to Financial Freedom at the address listed above or fax it to 1-866-574-0094.

6. Sell the Property: You may choose to sell the property and under certain conditions, you may be eligible for a short sale. In order to pursue this option, we will need an appraisal of the property. If you would like more information about this option, or would like to request an appraisal, please contact us.

 **rreed.n**
THE REVERSE MORTGAGE SPECIALISTS

2: Speranza Crossing
Austin, TX 78758
Telephone: 1-866-727-4303♦Fax: 1-866-574-0094

7. <u>Deed-in-Lieu of Foreclosure</u>: Under certain circumstances, we may be able to accept a Deed-in-Lieu of Foreclosure, which avoids the entire foreclosure process by permitting you to deed the property to your lender. If you are interested in this option, please contact us. Please be aware that all parties with an interest in the property may need to consent to the Deed-in Lieu transaction or execute the deed delivered to your lender.

8. <u>Pay in Full</u>: Pay in full the outstanding balance of the reverse mortgage.

9. <u>Refinance</u>: Refinance the debt to a new forward or reverse mortgage if there is sufficient equity to satisfy the existing mortgage and outstanding property charges. OneWest Bank N.A.® does not originate reverse mortgages. If you are interested in obtaining a reverse mortgage to refinance the debt then you will need to contact another lender. If you would like assistance in locating a reverse mortgage lender, you may wish to visit the National Reverse Mortgage Lenders Association website at http://reversemortgage.org.

For additional assistance, we strongly encourage you to contact one of the FHA-approved Housing Counseling Agencies on the enclosed list. A counselor will assist you in understanding your responsibility to repay this amount, options for repayment, and may also be able to provide you with information about agencies or programs in your area that could be of financial assistance to you. Please provide a copy of this letter to your counselor at the time of your counseling session.

We want you to know that we are available to help you through this process. Please feel free to contact us if you have any questions or concerns at 1-866-727-4303, Monday – Thursday from 7:00 a.m. – 7:00 p.m. and Friday from 7:00 a.m. – 5:00 p.m. Central Time.

Respectfully,

**Crisantema Vivero**
1-866-727-4303
**crisantema.vivero1@owb.com**
Reverse Mortgage Servicing Department

*This is a communication from a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, if a bankruptcy petition has been filed and there is either an "automatic stay" in effect in the bankruptcy case, or the debt has been discharged pursuant to the bankruptcy laws of the United States, this communication is intended solely for informational purposes. If your debt has been discharged, this letter is for the sole purpose of protecting a lien interest in the underlying mortgaged property and is not an attempt to recover any amounts from you personally. The foregoing notice has no effect on any bankruptcy plan, and you should continue to make any payments thereunder. If you have any questions about this notice, you should consult with your bankruptcy attorney and/or your bankruptcy trustee.*

# Exhibit M



**ELMORE**
ELDERLY MORTGAGE ASSISTANCE PROGRAM
FLORIDA HARDEST-HIT FUND

Hardest Hit Fund Approval Letter

Date: 6/19/15

Dear: WM

Congratulations! You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $4,454.11 _____ in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds. The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $1779.04 _____ plus one year of anticipated property tax and/or insurance payments in the amount of $2,675.07 _____. The maximum amount of HHF-ELMORE funds provided is $25,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage. These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan. In the event of a conflict, the terms and conditions of the loan documents will control.

Exhibit B(1)

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to receive and the requirements that you must meet in order to receive assistance under the program by signing below. If at any time it is determined that you provided inaccurate or false information, or withheld information, in making application for assistance under the Florida Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

_____          7-15-2015
Borrower

_____   Date: _____
Co-Borrower

Florida HHF-ELMORE Approval Letter (11-2013)

### PROMISSORY NOTE
### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

**Date of this Note:**  6/19/2015                    FHFC Loan # 72292

**"Property"** means the Borrower's residence located at:

|                |        |       |          |
|----------------|--------|-------|----------|
| Street Address | City   | State | Zip Code |

**"First Mortgage Loan"** means the loan evidenced by the mortgage encumbering the Property dated _____ 03/27/2008 _____ given by _____ FHFC, to _____ as recorded in Official Records Book ___43556___, page _220_, or under clerk's instrument # _____, of the public records of _____ Broward _____ County, Florida.

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00), or so much thereof as may be advanced pursuant the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329. The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $25,000.00 as provided in Section 2. below.

### 2.    THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 11-2014)

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $25,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $25,000.00.

## 3. INTEREST

The interest on this Note shall be zero percent (0%) per annum.

## 4. REPAYMENT

(A)     I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)     I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

## 5. FORGIVENESS.

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

## 6. BORROWER'S PAYMENT BEFORE PAYMENT IS DUE

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

## 7. DEFAULT

(A)     **Default.** I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

**Forgivable:**     The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:**     If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:**     The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**     No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

**HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.**

**I/We acknowledge receipt of this Summary Disclosure of Loan Terms.**

_____     _____     𝓏     Date: 7-15 2015

**BORROWER**
Print nam.

_____     _____

_____     Date: _____

**BORROWER**
Print name: _____

FHFC Loan # 72292

## FLORIDA HOUSING FINANCE CORPORATION
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### SUMMARY DISCLOSURE OF LOAN TERMS

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $25,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $50,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**    Up to $25,000.00.

**Interest Rate:**    0%

**Term of Loan:**    Two years.

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)      **Notice of Default.** If I am in default, the Lender may, but is not required to, send me a written notice.

(C)      **No Waiver by Lender.** Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)      **Payment of Lender's Costs and Expense.** If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

## 8.   MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

## 9.   BORROWER'S WAIVERS

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

## 10.   GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above. A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

## 11.   RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elinore) Program (Rev. 11-2014)

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

## 12.    LIMITS ON PERSONAL LIABILITY

(A)    Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)    The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

## 13.    HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW

(A)    The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B)    If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C)    No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D)    This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

## 14.    ATTACHMENTS

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

PROMISSORY NOTE SIGNATURE PAGE
FLORIDA HOUSING FINANCE CORPORATION
FLORIDA HARDEST HIT FUND (HHF) PROGRAM
ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

NOTICE TO BORROWER
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.
ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

SIGN ORIGINAL ONLY.

BORROWER
Print Name:

BORROWER
Print Name:

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 11-2014)

FHFC Loan # 72292

## RIDER TO PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.**

A.  **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.  **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $25,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $50,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 11-2014)

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C.      **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D.      **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E.      **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this 15 day of July , 2015

_____
Borrower
Print name: ____ WM

_____
Borrower
Print name: _____

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 11-2014)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # 72292

<div align="center">

**SUBORDINATE MORTGAGE**
**(WITH DUE ON SALE OR REFINANCE CLAUSE)**

**FLORIDA HOUSING FINANCE CORPORATION**
**FLORIDA HARDEST HIT FUND (HHF) PROGRAM**
**ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM**

</div>

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $25,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

THIS SUBORDINATE MORTGAGE (this "Mortgage") is made this 19th day of _____ June _____, 20 15 , by _____ W M (herein, the "Borrower") whose address is _____, ___ 33311 (this address is the Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as evidenced by the mortgage dated _____ 03/27/2008 _____ from _____ W M in the original principal amount of $ 322,500.00 and recorded in OR Book _____ 45358 _____, Page ___ 220 ___, or under clerk's instrument # _____, of the public records of _____ Broward _____ County, Florida.

This Mortgage is subordinate to the First Mortgage.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of _____ Broward _____, State of Florida (insert legal description):

<div align="center">

**SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE**

</div>

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev 11-2014)

"Home."

BORROWER COVENANTS represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

BORROWER FURTHER COVENANTS and agrees with Lender as follows:

1.      Payment. Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

2.      Funds for Taxes and Insurance. Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

3.      Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

4.      Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5.      Liability and Hazard Insurance. Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

6.      Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

7.      Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

8.      Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

9.      Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10.     Borrower Not Released; Forbearance by Lender Not a Waiver. No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.     Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements and references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms

2

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

12. **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

13. **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

15. **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

16. **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

17. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

18. **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

19. **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

20. **Special Provisions.**

(a) **Default.** In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

(b) **Mortgage Not Assumable.** This mortgage cannot be assumed.

(c) **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale, and, in the case of a refinance, only to the extent of any cash back to the Borrower. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan. If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

(d)     **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

IN WITNESS WHEREOF, Borrower has executed this Mortgage on the date first above written.

NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $25,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

Witnesses:

Print name: _____

Print name: _____

Print nam _____

Witnesses:

Print name: _____

Borrower

Print name: _____

Print name: _____

STATE OF FLORIDA
COUNTY OF _____

_____ acknowledged before me this 15 day of _____, 2015 by _____ and _____. Such person(s) is (are) _____ oduced valid driver's license(s) as identification.

Notary Public State of Florida
Print Name: _____
Commission No. _____
Commission Expires: _____

4

# Exhibit N

**Corrine Lincoln**

| | |
|---|---|
| **From:** | Corrine Lincoln |
| **Sent:** | Monday, March 06, 2017 4:36 PM |
| **To:** | Hatcher, Mike |
| **Subject:** | RE: |

Awesome! Thank you for all your help on this Mike.

Have a great day.

Corrine E. Lincoln, Esq | Staff Attorney
Coast to Coast Legal Aid of South Florida, Inc.
491 N. State Rd. 7 | Second Floor | Plantation, FL 33317
Tel: (954) 736-2441 | Fax: (954) 736-2482
clincoln@legalaid.org | www.coasttocoastlegalaid.org
Visit CCLA on: Facebook | Twitter | YouTube | Donate Online

      

*CONFIDENTIALITY NOTICE: This email is ONLY for the person(s) named in the message header. Unless otherwise indicated, it contains information that is confidential, privileged or exempt from disclosure under applicable law. If you have received it in error, please notify the sender of the error and delete the message. Thank you.*

**From:** Hatcher, Mike [mailto:Mike.Hatcher@cit.com]
**Sent:** Monday, March 06, 2017 4:35 PM
**To:** Corrine Lincoln
**Subject:** RE: v

Yes, you understand correctly. One little caveat to that is that this is a change we have implemented is for the state of Florida only. There are other states with quite similar programs where the remaining balance goes to principal. The similarities in programs was essentially at the heart of our confusion. A careful re-examination of Florida's language of their program is how we came to make this change going forward to all Florida-ELMORE funds. It is a policy change, precipitated by Ms. Murray's case, that is already in place.



| **Mike Hatcher** | +1 866-508-4494 X6348 (tel) | 2900 Esperanza Crossing |
|---|---|---|
| Escalations Specialist | | Austin, TX 78758 |
| Customer Care | **Mike.Hatcher@cit.com** | **www.cit.com** |
| Experience | | www.financialfreedom.com |

This is a communication from a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or your debt has been discharged pursuant to the bankruptcy laws of the United States, this communication is intended solely for informational purposes.

1



**From:** Corrine Lincoln [mailto:CLincoln@LegalAid.org]
**Sent:** Monday, March 06, 2017 3:13 PM
**To:** Hatcher. Mike
**Subject:** R! 

Good afternoon Mike,

I am in receipt of your letter dated 3/2/2017 indicating that an error was made in applying the remaining balance of Ms. /'s ELMORE funds towards her principle loan balance. I will advise             :ay that on 3/1/2017 FF mailed a check to the Broward County Property Appraiser to pay the balance of her property taxes and that  balance of $206.89 remains in her escrow account, to be applied to future property taxes and insurance.

Based on our discussion last week, I would like to confirm my understanding on the following:  Financial Freedom will no longer apply ELMORE funds towards the borrower's principle loan balance;  going forward Financial Freedom will hold the funds in escrow, to be applied towards the borrower's homeowner's insurance and property taxes, until depleted. This will be a change in policy for Financial Freedom.

If this is correct, can you please give me an eta when this change will be implemented?

Corrine E. Lincoln, Esq | Staff Attorney
Coast to Coast Legal Aid of South Florida, Inc.
491 N. State Rd. 7 | Second Floor | Plantation, FL 33317
Tel: (954) 736-2441 | Fax: (954) 736-2482
clincoln@legalaid.org  | www.coasttocoastlegalaid.org
Visit CCLA on: Facebook | Twitter | YouTube | Donate Online




*CONFIDENTIALITY NOTICE: This email is ONLY for the person(s) named in the message header. Unless otherwise indicated, it contains information that is confidential, privileged or exempt from disclosure under applicable law. If you have received it in error, please notify the sender of the error and delete the message. Thank you.*

**From:** Hatcher, Mike [mailto:Mike.Hatcher@cit.com]
**Sent:** Wednesday, February 22, 2017 1:59 PM
**To:** Corrine Lincoln
**Subject:** RE:

Got it. Thanks



| Mike Hatcher | +1 866-508-4494 X6348 (tel) | 2900 Esperanza Crossing |
| Escalations Specialist | | Austin, TX 78758 |
| Customer Care | Mike.Hatcher@cit.com | www.cit.com |
| Experience | | www.financialfreedom.com |

# Exhibit O



RMS
5010 Linbar Drive, Suite 100
Nashville, TN 37211

Statement Date: October 01, 2016
Month Ending: September 30, 2016

**Monthly Statement**

Please note: You can access your account statements, forms and other information online by registering for our website which can be found at www.rmsloan.com. Setting up online access is easy and will require you to create a secure login and password allowing you to access your loan information at any time.

00475

C C       COURT

**\*\*\* THIS IS NOT A BILL \*\*\***

| Account Information | |
|---|---|
| Pay Plan Type: | Line of Credit |
| Funded Date: | 04/30/2008 |
| Loan #: | |
| Borrower: | |
| Property: | C C     JRT |

| Credit Line Set Aside Information | |
|---|---|
| Original Credit Line: | $0.00 |
| Current Gross Credit Line: | $0.00 |
| Unsch. Credit Line Disb. Bal. (-): | $0.00 |
| Net Credit Line Set Aside (=): | $0.00 |
| *Modified Term or Modified Tenure only* | |

### Interest Rates

Interest Rate Type:   Monthly (1-Yr CMT)

| Month | Index | Margin | Int. Rate (Index+Margin) |
|---|---|---|---|
| September: | 0.530% | 1.500% | 2.030% |
| October: | 0.590% | 1.500% | 2.090% |
| November: | (\*\*) 0.600% | 1.500% | 2.100% |

*our Reverse Mortgage loan has a variable-rate feature; the monthly and daily periodic rates may vary as a result. Please refer to important information found on the back of this monthly statement and on the additional page.*

### Principal Limit Information

| | |
|---|---|
| Original Principal Limit: | $164,850.00 |
| Current Principal Limit: | $202,581.73 |
| Loan Balance (-): | $206,581.08 |
| Repair Set Aside (-): | $0.00 |
| First Year Set Aside (-): | $0.00 |
| Credit Line Set Aside (-): | $0.00 |
| Life Expectancy Set Aside Amt (-): | $0.00 |
| Servicing Fee Set Aside (-): | $2,873.54 |
| Net Principal Limit (=): | ($6,872.89) |

| Interest Rate Information: | ANNUAL PERCENTAGE RATE (APR): | 2.705% |
|---|---|---|

| Loan Periodic Rates: | | Mortgage Insurance Premium (MIP) Periodic Rates: | | Interest (Finance Charge): | |
|---|---|---|---|---|---|
| Monthly Periodic Rate on Applicable Principal Balance: | 0.169% | MIP Monthly Periodic Rate on Applicable Principal Balance: | 0.042% | Periodic **Finance Charge:** | **$348.68** |
| Daily Periodic Rate on Applicable Advances or Payments: | 0.006% | MIP Daily Periodic Rate on Applicable Advances or Payments: | 0.001% | | |
| Corresponding APR: | 2.030% | Corresponding APR: | 0.500% | | |

**Notice of Changes in your Interest Rate on your Adjustable Rate Reverse Mortgage**

On November 01, 2016, the interest rate on your adjustable-rate Reverse Mortgage will increase from 2.090% to 2.100%. Your present interest rate was based on an index value of 0.590%. To determine your new interest rate, we added the current index value of 0.600% as of September 26, 2016 as published by the Federal Reserve Bank, to the agreed upon margin of 1.500% for a total of 2.100%. This new rate has not been rounded to the nearest 1/8th percent. The initial interest rate on your mortgage was 3.170%, which may not be increased beyond 13.170% during the life of the mortgage.

**Total Funds Available**

Net Credit Line Set Aside + Net Principal Limit =                                                                                                $0.00

If you have any questions or would like further information on your reverse mortgage, please call our Customer Service Department.



Exhibit C

# Exhibit P



FLORIDA·HARDEST·HIT FUND

Hardest Hit Fund Approval Letter

Date: 9/30/16

Dear:     C C

Congratulations! You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $ 15,362.59          in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds. The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $ 12411.83          plus one year of anticipated property tax and/or insurance payments in the amount of $ 2,950.76          . The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage. These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan. In the event of a conflict, the terms and conditions of the loan documents will control.

Exhibit R

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to
receive and the requirements that you must meet in order to receive assistance under the program
by signing below. If at any time it is determined that you provided inaccurate or false
information, or withheld information, in making application for assistance under the Florida
Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

_____  Date: _____
Borrower

_____  Date: _____
Co-Borrower

PHFC Loan # 73586

## FLORIDA HOUSING FINANCE CORPORATION
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## SUMMARY DISCLOSURE OF LOAN TERMS

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**     Up to $50,000.00.

**Interest Rate:**     0%

**Term of Loan:**     Two years.

**Forgivable:**     The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:**     If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:**     The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**     No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

**HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.**

**I/We acknowledge receipt of this Summary Disclosure of Loan Terms.**

_____     Date: _____
**BORROWER**
Print name: ____

_____     Date: _____
**BORROWER**
Print name: _____

### PROMISSORY NOTE
### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

**Date of this Note:** _____9/30/2016_____          FHFC Loan # 73586_____

**"Property"** means the Borrower's residence located at:

|  |  | ᵀᵀ | 33311 |  |
| --- | --- | --- | --- | --- |
| Street Address | City | State | Zip Code | |

**"First Mortgage Loan"** means the loan evidenced by the mortgage encumbering the Property dated _____04/25/2008_____ given by _____World Alliance Financial Corp._____ to _____ as recorded in Official Records Book __45347__, page __940__, or under clerk's instrument # _____, of the public records of _____Broward_____ County, Florida.

### 1. BORROWER'S PROMISE TO PAY

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or so much thereof as may be advanced pursuant to the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329. The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $50,000.00 as provided in Section 2. below.

### 2. THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

**THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $50,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $50,000.00.

## 3. INTEREST

The interest on this Note shall be zero percent (0%) per annum.

## 4. REPAYMENT

(A)     I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)     I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

## 5. FORGIVENESS.

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

## 6. BORROWER'S PAYMENT BEFORE PAYMENT IS DUE

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

## 7. DEFAULT

(A)     **Default.** I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)     **Notice of Default.** If I am in default, the Lender may, but is not required to, send me a written notice.

(C)     **No Waiver by Lender.** Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)     **Payment of Lender's Costs and Expense.** If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

## 8.     MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

## 9.     BORROWER'S WAIVERS

· I waive my rights that require the Lender to do certain things.  Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

## 10.     GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above.  A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above.  A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

## 11.     RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

## 12.    LIMITS ON PERSONAL LIABILITY

(A)    Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)    The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

## 13.    HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW

(A)    The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.
(B)    If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.
(C)    No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.
(D)    This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

## 14.    ATTACHMENTS

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

PROMISSORY NOTE SIGNATURE PAGE
FLORIDA HOUSING FINANCE CORPORATION
FLORIDA HARDEST HIT FUND (HHF) PROGRAM
ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM


NOTICE TO BORROWER
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.
ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

SIGN ORIGINAL ONLY.


_____
BORROWER
Print Name _____


_____
BORROWER
Print Name: _____

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

FHFC Loan # 73586

## RIDER TO PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.

A.  **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.  **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C.   **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D.   **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E.   **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this _10_ day of _October_, 201_6_

_____
Borrower
Print name: _C C_          _____

_____
Borrower
Print name: _____

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # 73586

## SUBORDINATE MORTGAGE
### (WITH DUE ON SALE OR REFINANCE CLAUSE)

### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

THIS SUBORDINATE MORTGAGE (this "Mortgage") is made this 30th day of ___September___, 20 16 , by _____ (herein, the "Borrower") whose address is _____ C  C ___., FL., 33311 (this address is Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as evidenced by the mortgage dated ___04/25/2008___ from _____ to ___C  C___ in the original principal amount of $ 315,000.00 and recorded in OR Book ___40347___, Page ___940___, or under clerk's instrument # _____, of the public records of ___Broward___ County, Florida.

This Mortgage is subordinate to the First Mortgage.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of ___Broward___, State of Florida (insert legal description):

### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

"Home."

**BORROWER COVENANTS** represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

**PROVIDED ALWAYS** that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

**BORROWER FURTHER COVENANTS** and agrees with Lender as follows:

1.      **Payment.** Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

2.      **Funds for Taxes and Insurance.** Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

3.      **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

4.      **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5.      **Liability and Hazard Insurance.** Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

6.      **Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

7.      **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

8.      **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

9.      **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10.     **Borrower Not Released; Forbearance by Lender Not a Waiver.** No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.     **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements and references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms

2

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

**12.** **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

**13.** **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14.** **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

**15.** **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

**16.** **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

**17.** **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

**18.** **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

**19.** **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

**20.** **Special Provisions.**

(a) **Default.** In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

(b) **Mortgage Not Assumable.** This mortgage cannot be assumed.

(c) **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale, and, in the case of a refinance, only to the extent of any cash back to the Borrower. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan. If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

3

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

(d) **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

IN WITNESS WHEREOF, Borrower has executed this Mortgage on the date first above written.

NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.

Witnesses:

Print name: _Marta M Estraz_

Print name: _Sarah Barker_

Print name _____
Borrower

Witnesses:

Print name: _____

Print name: _____
Borrower

Print name: _____

Print name: _____

STATE OF FLORIDA
COUNTY OF _Broward_

The foregoing instrument was acknowledged before me this _10_ day of _October_, 20_16_, by _____ and _____. Such person(s) is (are) (check one) _____ personally known to me or _✓_ produced valid driver's license(s) as identification.

_____
Notary Public, State of Florida
Print Name: _____
Commission No.: _____
Commission Expires: _____

JEFFREY HITTLEMAN
MY COMMISSION # GG 014935
EXPIRES: July 24, 2020
Bonded Thru Notary Public Underwriters

4

# Exhibit Q

**Financial Freedom**

THE REVERSE MORTGAGE SPECIALIST®

July 31, 2017

South Florida, Inc.
491 North State Road 7 (Second Floor)
Plantation, FL 33317

*Re:     Customer.
         Property Address                                          TX 33025
         Financial Freedom Loan Number. 5002*

Dear Ms. Barker:

I am writing in response to your email dated July 19, 2017. I appreciate the opportunity to address your concerns regarding the above-referenced loan.

We received funds from the Florida Hardest-Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) on April 22, 2016, in the amount of $9,994.17. From those funds, $3,783.61 was immediately applied to past due property charges bringing the account out of foreclosure status to active status. During the year following the receipt of the funds, $1,757.00 was paid for hazard insurance coverage and $1,451.85 was paid to cover county property taxes, leaving an HHF-ELMORE balance of $3,001.71.

Under our current agreement with the HHF-ELMORE program, we were required to apply the remaining balance of $3,001.71 towards P's loan principal. We respectfully decline your request to have these funds applied to her insurance bill.

Should you have any further questions regarding this matter, please call me at (866) 508-4494 extension 6348, or via email at Mike.Hatcher@cit.com. I am available Monday through Friday, 8:00 a.m. to 5:00 p.m. Central time.

Sincerely,

Mike Hatcher
Escalation Specialist
Financial Freedom,
a division of CIT Bank, N.A.

*This is a communication from a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, if a bankruptcy petition has been filed and there is either an "automatic stay" in effect in the bankruptcy case, or the debt has been discharged pursuant to the bankruptcy laws of the United States, this communication is intended solely for informational purposes.*

**Notice of Error and Request for Information**

Federal law gives customers the right to notify us of an error regarding the servicing of their loan or to request information regarding their loan. If you wish to provide a notice of error or a request for information, you must write to us at Financial Freedom, a division of CIT Bank, N.A., 2900 Esperanza Crossing, FF-01, Austin, TX 78758. The letter must provide the customer's name, loan number, and description of the error or detailed list of the information being requested.

2900 Esperanza Crossing
Austin, TX 78758

EXhibit T

# Exhibit R



**Reverse Mortgage Servicing Department**

P.O. Box 619093 Dallas, Texas 75261-9093
Toll-Free Customer Service: 855-683-3095
Toll-Free Customer Fax: 866-621-1036
Payoff Demand Toll-Free Fax: 866-902-7077

July 29, 2015

Sent via USPS Certified Mail



HOL

### Mortgage Due & Payable Notification

This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if this debt is involved in a bankruptcy or has been discharged in a bankruptcy proceeding, this communication is not an attempt to collect a debt against you and any information obtained or given will be for informational purposes only.

RE:   Reverse Mortgage Loa:

Property Address:

Dear Borrower:

Champion Mortgage services the reverse mortgage loan identified above for Nationstar Mortgage LLC d/b/a Champion Mortgage Company. The reverse mortgage is technically in default due to the non-payment of taxes and/or insurance on the principal residence. The outstanding balance on this loan is $79,071.53* as of 7/24/2015.

This default must be resolved by any of the following methods:

A. The total amount of money advanced to pay taxes and/or insurance of $5,739.70 must be repaid. Please contact us to discuss your options in detail..

B. The balance must be paid-in-full within 30 days from the date of this letter.

C. The mortgage will be released and no deficiency judgment filed if the property sells for the lesser of the debt, including shared appreciation, or 95% of the appraised value with the proceeds made payable to Champion Mortgage, even if the debt is greater than the appraised value.

   ➢ Please contact us for more information if you are interested in this option and believe that the property value is less than the outstanding principal balance.

D. If the debt is not paid-in-full, or the property is not sold within 30 days from the date of this letter, we are required to initiate foreclosure proceedings.

9314710011700821243279

Exhibit U

E. We are permitted to consider accepting a deed-in-lieu of foreclosure, as long as good marketable title can be conveyed.

The Mortgagor or the Mortgagor's estate may request an appraisal at his or her own expense if an estimate of the property's current value is desired. If none of the actions above are taken in 30 days, Foreclosure will be initiated by the Servicer within 3 months, but not less than 1 month.

**Whichever option that you choose, HUD guidelines require that we obtain a full appraisal on the property. You may be receiving a phone call from our appraisal vendor in the coming weeks to attempt to schedule an appointment to visit the property.**

**If you fail to cure this breach within 30 days for the date of this letter, we will proceed immediately with foreclosure and sale of the property.**

Once the foreclosure action begins, you can still pay all monies due, including attorney's fees, and have the foreclosure process discontinued.

In addition, you are strongly encouraged to contact one of the HUD-approved housing counseling agencies below for a free counseling session. Your counselor will help you review your financial situation. In addition, your counselor will be able to refer you to resources that might be able to assist you.

If you have difficulty reaching us or a HUD-approved housing counseling agency, you may contact the FHA National Servicing Center (NSC) Monday through Friday between the hours of 7:00 am and 7:00 pm (Central Standard Time) at (877) 622-8525. The NSC responds to all matters of FHA-insured mortgage issues: therefore, you should ask to speak to with HECM Program Specialist.

We realize these are very difficult times and are willing to work with you, but it is essential that you contact us immediately to discuss these important matters. You may reach our Reverse Mortgage Servicing Center at 1-855-683-3095 from 8am - 8pm EST, Monday through Thursday, and 8am-5pm EST on Fridays.

Sincerely,
James Warren
Champion Mortgage
1-855-683-3095
P.O. Box 619093
Dallas, Texas 75261-9093

\* This is not a payoff figure. Please contact our Reverse Mortgage Servicing Department to obtain an accurate payoff amount.

**This is an attempt to collet a debt and any information obtained will be used for that purpose.**

DAP1 TIGENBKE 03 2011

# Exhibit S



Hardest Hit Fund Approval Letter

Date: 4/8/2016

Dear: ⊥      B.B

Congratulations! You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $9994.17_____ in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds. The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $7420.35_____ plus one year of anticipated property tax and/or insurance payments in the amount of $2573.82_____. The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage. These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan. In the event of a conflict, the terms and conditions of the loan documents will control.

Exhibit S

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to
receive and the requirements that you must meet in order to receive assistance under the program
by signing below. If at any time it is determined that you provided inaccurate or false
information, or withheld information, in making application for assistance under the Florida
Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

Borrower /                                   .ate: ____

_____ Date: _____
Co-Borrower



Hardest Hit Fund Approval Letter

Date: 5/25/16

Dear:  M.P

Congratulations!  You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $ 17,784.16_____ in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds.  The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $ 12044.86_____ plus one year of anticipated property tax and/or insurance payments in the amount of $ 5,739.30_____.  The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage.  These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan.  In the event of a conflict, the terms and conditions of the loan documents will control.

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to receive and the requirements that you must meet in order to receive assistance under the program by signing below. If at any time it is determined that you provided inaccurate or false information, or withheld information, in making application for assistance under the Florida Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

MP      Date: 5 / 27 / 2016
Borrower

_____ Date: _____
Co-Borrower

FHFC Loan # 83802

## FLORIDA HOUSING FINANCE CORPORATION
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## SUMMARY DISCLOSURE OF LOAN TERMS

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**    Up to $50,000.00.

**Interest Rate:**    0%

**Term of Loan:**    Two years.

**Forgivable:**    The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:**    If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:**    The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**    No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.

I/We acknowledge receipt of this Summary Disclosure of Loan Terms.

_____    Date: _5_/_27_/_2016_
**BORROWER**
Print name:   M P   _____

_____    Date: _____
**BORROWER**
Print name: _____

## PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

*THIS PROMISSORY NOTE MAY REQUIRE*
*A BALLOON PAYMENT UPON MATURITY*

Date of this Note: _____ 5/25/2016 _____          FHFC Loan # 83802 _____

"**Property**" means the Borrower's residence located at:

| 6444 Evans St | Hollywood | FL | 33024 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

"**First Mortgage Loan**" means the loan evidenced by the mortgage encumbering the Property dated _____ 01/03/2011 _____ given by _____ Genworth Financial Home Equity Access, Inc. _____ to _____ M ꝺ _____ as recorded in Official Records Book _____ 47640 __, page __ 389 __, or under clerk's instrument # _____, of the public records of _____ Broward _____ County, Florida.

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or so much thereof as may be advanced pursuant the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329. The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $50,000.00 as provided in Section 2. below.

### 2.    THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $50,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $50,000.00.

3. INTEREST

The interest on this Note shall be zero percent (0%) per annum.

4. REPAYMENT

(A)    I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)    I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

5. FORGIVENESS.

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

6. BORROWER'S PAYMENT BEFORE PAYMENT IS DUE

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

7. DEFAULT

(A)    Default. I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)     Notice of Default. If I am in default, the Lender may, but is not required to, send me a written notice.

(C)     No Waiver by Lender. Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)     Payment of Lender's Costs and Expense. If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

## 8.     MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

## 9.     BORROWER'S WAIVERS

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

## 10.     GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above. A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

## 11.     RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

12. **LIMITS ON PERSONAL LIABILITY**

(A)     Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)     The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

13. **HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW**

(A)     The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B)     If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C)     No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D)     This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

14. **ATTACHMENTS**

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

PROMISSORY NOTE SIGNATURE PAGE
FLORIDA HOUSING FINANCE CORPORATION
FLORIDA HARDEST HIT FUND (HHF) PROGRAM
ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM


NOTICE TO BORROWER
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.
ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

SIGN ORIGINAL ONLY.


_____

**BORROWER**
Print Name:    M .P


_____

**BORROWER**
Print Name: _____

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

FHFC Loan # 83802

## RIDER TO PROMISSORY NOTE
### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.

A.  **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.  **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C.   **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D.   **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E.   **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this $27$ day of May , 201 6

Borrower
Print name: _

Borrower
Print name: _____

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # 83802

## SUBORDINATE MORTGAGE
### (WITH DUE ON SALE OR REFINANCE CLAUSE)

### FLORIDA HOUSING FINANCE CORPORATION
### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

THIS SUBORDINATE MORTGAGE    "Mortgage") is made this 25th day of ____ May ____, 20 16, by _____ (herein, the "Borrower") whose address is ____ 6444 Evans St, Hollywood, Fl., 33024 ____ (this address is Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to **FLORIDA HOUSING FINANCE CORPORATION** (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as    the mortgage dated ____ 01/03/2011 ____ from Genworth Financial Home Equity Access, Inc.    to    the original principal amount of $127,500.00 ____ and recorded in OR Book ____ 47640 ____, age __ 389 __, or under clerk's instrument # _____, of the public records of ____ Broward ____ County, Florida.

This Mortgage is subordinate to the First Mortgage.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of _____ Broward _____, State of Florida (insert legal description):

### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

"Home."

**BORROWER COVENANTS** represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

**PROVIDED ALWAYS** that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

**BORROWER FURTHER COVENANTS** and agrees with Lender as follows:

1. **Payment.** Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

2. **Funds for Taxes and Insurance.** Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Liability and Hazard Insurance.** Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance by Lender Not a Waiver.** No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements and references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms

2

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

12. **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

13. **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

15. **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

16. **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

17. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

18. **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

19. **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

20. **Special Provisions.**

(a) **Default.** In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

(b) **Mortgage Not Assumable.** This mortgage cannot be assumed.

(c) **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale, and, in the case of a refinance, only to the extent of any cash back to the Borrower. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan. If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

3

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

   (d)   **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

   IN WITNESS WHEREOF, Borrower has executed this Mortgage on the date first above written.

**NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.**

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Witnesses:

Print name: _____

Print name: _____

Print name: _____          Borrower
                                              Print name: _____

Witnesses:

Print name: _____

                                              Borrower
                                              Print name: _____

Print name: _____

STATE OF FLORIDA
COUNTY OF _____

   The foregoing instrument was acknowledged before me this 27 day of _____, 20 16 by _____ and _____ (check one) _____ personally known to me or _____ produced valid driver's license(s) as identification.

                                              _____
                                              Notary Public, State of Florida
                                              Print Name: Sarah Barker
                                              Commission No.: FF905116
                                              Commission Expires: 9 / 27 / 2019

SARAH BARKER
MY COMMISSION # FF 905116
EXPIRES: September 27, 2019
Bonded Thru Notary Public Underwriters

4



ELMORE
FLORIDA HARDEST HIT FUND

Hardest Hit Fund Approval Letter

Date: 5/25/16

Dear:

Congratulations! You have qualified to receive assistance through the Florida Hardest Hit Fund.

You have been approved to receive $ 17,784.16 ___ in Hardest Hit Fund Elderly Mortgage Assistance Program (HHF-ELMORE) funds. The HHF-ELMORE assistance amount is calculated using information provided by your servicer/lender as the amount that has been advanced on your behalf for delinquent Property Charges of $ 12044.86 ___ plus one year of anticipated property tax and/or insurance payments in the amount of $ 5,739.30 ___. The maximum amount of HHF-ELMORE funds provided is $50,000. Assistance may be adjusted based on the previous receipt of other Hardest Hit Fund Assistance.

The funds for the anticipated property taxes and insurance costs will be held in a set-aside/escrow account by your servicer/lender for the express purpose of paying taxes and insurance until the funds are depleted. At any time, if the funds in the set-aside/escrow account do not equal total tax and/or insurance payment due you are responsible for any remaining balance due.

Your assistance under the Florida Hardest Hit Fund will be in the form of a subordinate mortgage loan that is forgivable, incrementally, over a period of time subject to certain conditions. The mortgage loan will be evidenced by a Promissory Note, a Rider to Promissory Note and a Subordinate Mortgage. These loan documents and this letter contain the terms and conditions that will govern your HHF-ELMORE Loan. In the event of a conflict, the terms and conditions of the loan documents will control.

Exhibit ✓

Hardest Hit Fund – ELMORE
Approval Letter
Page 2

Please acknowledge your understanding of the amount that you have been determined eligible to
receive and the requirements that you must meet in order to receive assistance under the program
by signing below. If at any time it is determined that you provided inaccurate or false
information, or withheld information, in making application for assistance under the Florida
Hardest Hit Fund, your participation in the program(s) will be automatically terminated.

_____  Date: 5 / 27 / 2016
Borrower

_____  Date: _____
Co-Borrower

FHFC Loan # 83802

## FLORIDA HOUSING FINANCE CORPORATION
### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM - FLORIDA HARDEST HIT FUND (HHF) PROGRAM
### SUMMARY DISCLOSURE OF LOAN TERMS

The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due . In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The Elmore Loan will be evidenced by a Promissory Note, a Rider to Promissory Note, and a Subordinate Mortgage (collectively, the Loan Documents). The Loan Documents contain the terms and conditions that will govern the Elmore Loan. Following is a summary of the Elmore Loan terms:

**Loan Amount:**     Up to $50,000.00.

**Interest Rate:**     0%

**Term of Loan:**     Two years.

Elmore Loan Disclosure (New 09-2015) – Elderly Mortgage Assistance (Elmore) Program - Florida Hardest Hit Fund (HHF) Program

**Forgivable:**    The loan may be forgiven in two annual increments of 50% each over its two-year term, subject to conditions in the Loan Documents.

**Repayment upon sale or refinance:**    If the homeowner sells or refinances the home at any time before the loan is completely forgiven, the loan balance then outstanding will be due and payable to the extent of any net proceeds realized by the homeowner, in the case of a sale, or to the extent of any cash realized by the homeowner, in the case of a refinance, all as more specifically provided in the Loan Documents.

**Mortgage:**    The loan will be secured by a subordinate mortgage on the homeowner's home.

**Costs:**    No loan fees or closing costs associated with the loan will be charged by the Lender to the homeowner.

HOMEOWNERS SHOULD REFER TO THE LOAN DOCUMENTS FOR THE TERMS AND CONDITIONS THAT WILL GOVERN THEIR ELMORE LOAN. THIS SUMMARY DISCLOSURE OF LOAN TERMS IS A SUMMARY ONLY AND IS NOT INTENDED TO REPLACE OR AMEND THE TERMS AND CONDITIONS IN THE LOAN DOCUMENTS. IN THE EVENT OF A CONFLICT BETWEEN THIS SUMMARY DISCLOSURE OF LOAN TERMS AND THE LOAN DOCUMENTS, THE LOAN DOCUMENTS WILL CONTROL.

I/We acknowledge receipt of this Summary Disclosure of Loan Terms.

_____    Date: 5 /27, 2016
**BORROWER**
Print name

_____    Date: _____
**BORROWER**
Print name: _____

PROMISSORY NOTE
FLORIDA HOUSING FINANCE CORPORATION
FLORIDA HARDEST HIT FUND (HHF) PROGRAM
ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

*THIS PROMISSORY NOTE MAY REQUIRE
A BALLOON PAYMENT UPON MATURITY*

Date of this Note: _____ 5/25/2016 _____          FHFC Loan # 83802 _____

"Property" means the Borrower's residence located at:

|  |  |  | 33024 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

"First Mortgage Loan" means the loan evidenced by the mortgage encumbering the Property dated _____ 01/03/2011 _____ given by _____ Genworth Financial Home Equity Access, Inc. _____ to _____ as recorded in Official Records Book _____ 47640 _____ , page _____ 389 _____ , or under clerk's instrument # _____ , of the public records of _____ Broward _____ County, Florida.

### 1.    BORROWER'S PROMISE TO PAY

In return for a loan (the "Elmore Loan") that I (an undersigned "Borrower") have received, I (and if there is more than one undersigned Borrower, jointly and severally) promise to pay to the order of FLORIDA HOUSING FINANCE CORPORATION (the "Lender"), a public corporation, the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00), or so much thereof as may be advanced pursuant the terms of this Note (the "Principal Amount"), at the office of the Lender whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329. The term "Lender" as used in this Note includes anyone who takes this Note by transfer and who is entitled to receive payments under this Note. The actual Principal Amount of my Elmore Loan may be less than $50,000.00 as provided in Section 2. below.

### 2.    THE LOAN; ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

The loan evidenced by this Note is made by the Lender to me under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The Elmore Loan is made by the Lender to me and the Elmore Loan proceeds will be advanced on my behalf exclusively to pay property-related charges for which I am obligated under my First Mortgage Loan as provided in the Rider to Promissory Note

THIS NOTE AND THE MORTGAGE SECURING THIS NOTE ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES

(the "Rider to this Note") attached to this Note, the terms and conditions of which are incorporated herein by reference. The term "Loan Documents" means this Note, the Rider to this Note, and the mortgage (the "Mortgage") described in Section 8 of this Note, executed by me in connection with the Elmore Loan.

I understand that $50,000.00 represents the maximum amount of Elmore Program assistance available to me, and that the actual Principal Amount of my Elmore Loan may be less than that amount. The actual Principal Amount of my Elmore Loan will be the dollar amount required to (i) repay the amount advanced on my behalf by my mortgage loan servicer for the payment of certain property-related charges, plus (ii) the amount of such property-related charges anticipated for up to twelve (12) months, as provided in the Rider to this Note, up to a maximum of $50,000.00.

3.   INTEREST

The interest on this Note shall be zero percent (0%) per annum.

4.   REPAYMENT

(A)   I understand that repayment of the Principal Amount under this Note shall be deferred until a date that is two (2) years after the Date of this Note (that date is the "Maturity Date" of this Note). If the Principal Amount has not been forgiven as provided in the Rider to this Note by the Maturity Date, I agree to repay the Principal Amount, or the balance of the Principal Amount not then forgiven, in full on the Maturity Date. I will make my payment to the order of the Lender at the Lender's address stated in section 1 of this Note, or at a different place if required by the Lender.

(B)   I also understand that the Mortgage contains a 'due on sale' clause and that under its terms I may be required to repay the Elmore Loan (or some portion thereof) if the Property is sold or refinanced before the Maturity Date of this Note. The governing terms and conditions are set forth in Section 20 of the Mortgage.

5.   FORGIVENESS.

The Principal Amount under this Note may be forgiven (reduced) in accordance with the terms and conditions as provided in the Rider to this Note.

6.   BORROWER'S PAYMENT BEFORE PAYMENT IS DUE

I have the right to make payment, in full, of the Principal Amount at any time before it is due. This payment is known as a "full prepayment." No partial prepayment of the Principal Amount is permitted. When I make a full prepayment, I will tell the Lender in a letter that I am doing so.

7.   DEFAULT

(A)   **Default.** I will be in default under this Note if: (i) I do not repay the Elmore Loan as required in section 4 above; (ii) I submit incomplete, false or misleading information to the Lender, or anyone acting on Lender's behalf, before or after the approval of this Elmore Loan; (iii) I make any

representation or warranty in connection with the Elmore Loan which was not true and correct at all relevant times; or (iv) I fail to provide to the Lender, or to anyone acting on Lender's behalf, on a timely basis any information required by the Lender in order for the Lender to monitor my continuing compliance with the terms and conditions of this Note. At the Lender's option, I may be declared in default if I fail to comply with any of the terms and conditions in the Loan Documents or in any commitment or approval letter issued to me in connection with the Elmore Loan. If I am in default, the Lender may, at its option, enforce this Note by any lawful means and require me to pay the Lender's costs and expenses as described in (D) below.

(B)       Notice of Default. If I am in default, the Lender may, but is not required to, send me a written notice.

(C)       No Waiver by Lender. Even if, at a time when I am in default, the Lender does not take action to enforce this Note, the Lender will still have the right to do so at a later time if I am in default.

(D)       Payment of Lender's Costs and Expense. If the Lender takes actions to enforce this Note as a result of a default under (A) above, the Lender will have the right to be paid back for all of its costs and expenses, including but not limited to reasonable attorney's fees, whether incurred by the Lender before filing suit, at trial or an appeal.

## 8.     MORTGAGE

In addition to the protections given to the Lender under this Note, I am executing a Mortgage in favor of the Lender, dated the same date as this Note, which gives the Lender a security interest in the Property. This Note and the Mortgage are not assumable.

## 9.     BORROWER'S WAIVERS

I waive my rights that require the Lender to do certain things. Those things are (a) to demand payment of amount due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of nonpayment (known as a "protest").

## 10.    GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it by hand or by overnight courier or by mailing it by certified or registered mail, addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Lender a notice in writing of my different address.

Any notices that must be given to the Lender under this Note will be given by mailing it by certified or registered mail to the Lender at the Lender's address stated in section 1 above. A notice will be mailed to the Lender at a different address if I am given a notice of that different address.

## 11.    RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated (jointly and severally) to pay the full amount owed and to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each of us individually or against all of us together and

may enforce its rights against any of us in any order. This means that any one of us may be required to pay all of the amounts owed under this Note. Notwithstanding the terms and conditions in this section 11, the personal liability of any Borrower is limited in the manner and to the extent as provided in section 12 below.

12.   LIMITS ON PERSONAL LIABILITY

(A)     Except as otherwise provided in this section 12, and contrary provisions elsewhere in this Note notwithstanding, the Borrower shall have no personal liability under this Note, the Mortgage or any other loan document for the repayment of the indebtedness evidenced by this Note or for the performance of any other obligations of the Borrower under the loan documents, and the Lender's only recourse for the satisfaction of the indebtedness and the performance of such obligations shall be the Property and Lender's exercise of its rights and remedies with respect to the Property under the Mortgage.

(B)     The Borrower shall be personally liable to the Lender for the full repayment of the indebtedness evidenced by this Note if the indebtedness, or any portion of the indebtedness, is obtained or created as a result of fraud or misrepresentation, including the submission of false, misleading or incomplete information, by the Borrower in connection with the application for or creation of the indebtedness or in connection with any advance or disbursement of the indebtedness made by the Lender on Borrower's behalf during the term of this Note.

13.   HEADINGS; SEVERABILITY; MODIFICATION; GOVERNING LAW

(A)     The headings of the sections, paragraphs and subdivisions of this Note are for the convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.

(B)     If any provision of this Note is determined by a court of competent jurisdiction to be illegal or invalid, such provision shall be severed from this Note, and the other provisions of this Note shall continue in full force and effect.

(C)     No term or provision of this Note may be waived or modified unless such waiver or modification is in writing and signed by both Borrower and Lender.

(D)     This Note has been executed and delivered in, and is to be governed by and construed under the laws of the State of Florida.

14.   ATTACHMENTS

The Rider to Promissory Note is attached hereto and its terms and conditions are incorporated into this Note by reference.

PROMISSORY NOTE SIGNATURE PAGE
FLORIDA HOUSING FINANCE CORPORATION
FLORIDA HARDEST HIT FUND (HHF) PROGRAM
ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

NOTICE TO BORROWER
DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES.
ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

SIGN ORIGINAL ONLY.

BORROWER
Print Name:

BORROWER
Print Name:

Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

FHFC Loan # 83802

## RIDER TO PROMISSORY NOTE
## FLORIDA HOUSING FINANCE CORPORATION
## FLORIDA HARDEST HIT FUND (HHF) PROGRAM
## ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

THIS RIDER TO PROMISSORY NOTE (this "Rider") is made and executed by the Borrower(s) and is incorporated into and shall be deemed to amend and supplement the Promissory Note made and executed by the Borrower(s) in favor of the Lender.

A.  **Definitions.** Capitalized terms not otherwise defined in this Rider, shall have the meaning attributed to those terms in the Promissory Note to which this Rider is attached.

B.  **Elderly Mortgage Assistance (Elmore) Program.** The Elderly Mortgage Assistance (Elmore) Program is a mortgage assistance program under the broader Florida Hardest Hit Fund (HHF) Program administered by Florida Housing Finance Corporation (Lender). The Elmore Program is designed to assist senior Florida homeowners who, after having received all of the equity proceeds that they were due under their reverse mortgage loans, are at risk of foreclosure due to their inability to pay property taxes, flood and hazard insurance premiums, special assessments, association dues, attorney's fees, property inspections, and other contractually required charges ("Property Charges") on their homes as required under the terms of their reverse mortgages, to the extent such charges are payable from an escrow or reserve account maintained by the servicer or have been advanced by the servicer of the reverse mortgage. Among the eligibility requirements for assistance under the Elmore Program, the homeowner's inability to pay the Property Charges must be due to a hardship recognized under the Elmore Program. The Elmore Program assistance will be provided by the Lender as an up-front, forgivable loan (Elmore Loan) to eligible homeowners secured by a subordinate mortgage on the homeowner's principal residence in Florida (which must be the residence described in the homeowner's reverse mortgage). The amount of Elmore Program assistance available to a homeowner is the lesser of: (1) $50,000.00 or (2) the dollar amount required to (i) repay the amount advanced on the homeowner's behalf by its mortgage loan servicer for the payment of Property Charges, plus (ii) the amount of anticipated Property Charges for up to twelve (12) months. The specific amount of Elmore Program assistance for which a homeowner is eligible will be determined on a loan by loan basis. If a homeowner has received assistance under any other HHF Program, the maximum overall HHF Program assistance may not exceed $75,000.00. The Elmore Loan proceeds will be advanced by the Lender in full at loan closing to the servicer of the homeowner's reverse mortgage loan for the purposes of (1) repaying the servicer for the amount of Property Charges advanced by the servicer on behalf of the homeowner under the homeowner's reverse mortgage and (2) funding an escrow or reserve account to be administered by the servicer in the amount of anticipated Property Charges for up to twelve (12) months and the funds used by the servicer to pay such Property Charges on behalf of the homeowner when and as they become due. In no event shall the Lender advance the Elmore Loan proceeds to any party other than the servicer of the homeowner's reverse mortgage loan. The principal amount of the Promissory Note to which this Rider is attached represents the

Page 1

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

maximum amount of Elmore Loan proceeds that will be disbursed by the Lender to the servicer of the Borrower's reverse mortgage loan for the purposes described in this Section B. As used in this Section B., the term homeowner shall be deemed synonymous with the term Borrower for purposes of the Borrower's Elmore Loan.

C. **Eligible Uses for Elmore Loan Proceeds.** The Elmore Loan proceeds shall be advanced by the Lender on the Borrower's behalf to the servicer or holder of the Borrower's reverse mortgage loan for the following purposes only: To pay Property Charges for which the Borrower is obligated under the terms of the Borrower's reverse mortgage loan as provided in Section B. above.

D. **Borrower's Representations and Warranties.** The Borrower represents and warrants to the Lender that, as of the date of this Rider, the following statements are true and correct and may be relied upon by the Lender in advancing loan proceeds on the Borrower's behalf: (i) the Borrower is a legal U.S. Citizen or lawful permanent resident of the U.S, (ii) the Property is the Borrower's principal residence, (iii) the Borrower actively occupies and resides on the Property as the Borrower's principal residence, (iv) the Property is subject to a reverse mortgage, (v) other than such proceedings, if any, as have been disclosed to the Lender in connection with the Borrower's reverse mortgage, no foreclosure proceedings have been filed against the Borrower or the Property, and there are no such proceedings threatened or pending imminent filing, (vi) the Borrower is not involved in an active bankruptcy proceeding, and there are no such proceedings involving the Borrower which are pending imminent filing, and (vii) the Borrower has not been convicted of a mortgage-related felony.

E. **Forgiveness.** The Elmore Loan as evidenced by the Promissory Note shall be forgiven in equal increments of 50% each over a period of two (2) years following the date of the Note in the following manner: The Principal Amount under the Note will be reduced by an amount equal to 50% of the Principal Amount on an annual basis with the first such reduction taking place on the first annual anniversary date following the date of the Note and by a second and final reduction in that same amount on the second annual anniversary date following the date of the Promissory Note, at which time the Principal Amount shall be reduced to $0.00 Dollars, unless the Property is sooner sold or refinanced, in which case the Principal Amount then outstanding shall be due and payable except as provided in section 20 of the Mortgage.

Executed by the Borrower(s) this ⟨27⟩ day of ⟨May⟩ , 201 ⟨6⟩

_____
Borrower
Print name    _____

_____
Borrower
Print name: _____

Page 2

Rider to Promissory Note – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

This instrument prepared by and,
following recording, to be returned to:
Florida Housing Finance Corporation
Attn: Homeownership Programs
227 North Bronough Street, Suite 5000
Tallahassee, Florida 32301

FHFC Loan # 83802

### SUBORDINATE MORTGAGE
#### (WITH DUE ON SALE OR REFINANCE CLAUSE)

#### FLORIDA HOUSING FINANCE CORPORATION
#### FLORIDA HARDEST HIT FUND (HHF) PROGRAM
#### ELDERLY MORTGAGE ASSISTANCE (Elmore) PROGRAM

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN IN ACCORDANCE WITH ITS TERMS, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE**

THIS SUBORDINATE MORTGAGE (this "Mortgage") is made this 25th day of _____ May _____ , 20 16 , by _____ (herein, the "Borrower") whose address is 6444 Evans St, Hollywood, FL 33024 (this address is Property Address and shall be the Borrower's address for purposes of any notice required or permitted hereunder). This Mortgage is given to FLORIDA HOUSING FINANCE CORPORATION (herein, the "Lender"), a public corporation, whose address is 227 North Bronough Street, Suite 5000, Tallahassee, Florida 32301-1329 (this address shall be the Lender's address for purposes of any notice required or permitted hereunder). As used herein, the term Lender shall include any successors or assigns of the Lender.

The Borrower is indebted to the Lender in the sum of up to FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) as evidenced by that certain Promissory Note (the "Note") of even date herewith executed by the Borrower in favor of the Lender evidencing a loan made by the Lender to the Borrower under the Elderly Mortgage Assistance (Elmore) Program, one of the programs available under the Florida Hardest Hit Fund (HHF) Program, which is administered by the Lender pursuant to sections 101 and 109 of the Emergency Economic Stabilization Act of 2008 (P.L. 110-343), as amended, and the program guidelines established and implemented by the Lender in connection therewith. The loan ("Elmore Loan" or "Loan") evidenced by the Note is made by the Lender to the Borrower, and shall be advanced on behalf of the Borrower, exclusively to pay property related charges for which the Borrower is obligated under the Borrower's First Mortgage Loan described below, subject to the terms and conditions governing the Elmore Program.

Repayment of the indebtedness evidenced by the Note is deferred until a date that is two (2) years after the date hereof (that date is the "Maturity Date" of the Note). The Note is due and payable in full on the Maturity Date. The Note also provides that if at any time before the Maturity Date, the Borrower sells or refinances the Property the Note shall become immediately due and payable in full without notice or demand except as provided in Section 20 of this Mortgage.

The "First Mortgage" or "First Mortgage Loan" referred to in this Mortgage and in the Note means the first mortgage loan encumbering the Property described below as _____ the mortgage dated 01/03/2011 from Genworth Financial Home Equity Access, Inc. to _____ in the original principal amount of $127,500.00 and recorded in OR Book ____47640____ , Page ___389___ , or under clerk's instrument # _____ , of the public records of _____ Broward _____ County, Florida.

This Mortgage is subordinate to the First Mortgage.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, the payment of all other sums advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of the Borrower herein contained, the Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of _____ Broward _____ , State of Florida (insert legal description):

#### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage, and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property" or

**THIS MORTGAGE AND THE NOTE SECURED HEREBY ARISE OUT OF OR ARE GIVEN TO SECURE THE REPAYMENT OF A LOAN ISSUED IN CONNECTION WITH THE FINANCING OF HOUSING AND ARE EXEMPT FROM DOCUMENTARY STAMP TAX AND INTANGIBLE TAX PURSUANT TO SECTION 420.513(1), FLORIDA STATUTES**

Subordinate Mortgage – Florida Hardest Hit Fund (HHF) Program
Elderly Mortgage Assistance (Elmore) Program (Rev. 09-2015)

"Home."

BORROWER COVENANTS represents and warrants to Lender and its successors and assigns that Borrower is indefeasibly seized of the estate hereby conveyed in fee simple; has full right to mortgage, grant and convey the Property; and that the Property is unencumbered, except for other encumbrances of record. Borrower warrants title to the Property and will defend same against the lawful claims and demands of all persons whomsoever.

PROVIDED ALWAYS that if Borrower shall pay to Lender, all sums due or to become due under the Note or this Mortgage and shall perform, comply with, and abide by each and every stipulation, agreement, condition, and covenant of the Note and of this Mortgage, and shall pay all taxes that may accrue on the Property and all costs and expenses that Lender may be put to in collecting the Note and in foreclosure of this Mortgage or otherwise, including costs and reasonable attorney's fee, then this Mortgage and the estate hereby created shall cease and be null and void.

BORROWER FURTHER COVENANTS and agrees with Lender as follows:

1.      Payment. Borrower shall promptly pay when due the principal amount evidenced by the Note and all other sums of money payable by virtue of the Note or this Mortgage.

2.      Funds for Taxes and Insurance. Borrower shall pay or cause to be paid before same become delinquent all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any. If the Borrower fails to pay all such taxes, assessments and other charges then the Lender at its option may pay them and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

3.      Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower of interest due under the Note; then to principal of the Note; then to any other monies due under the Note or this Mortgage in that order.

4.      Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under the First Mortgage and any other mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which have attained or may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5.      Liability and Hazard Insurance. Borrower shall maintain liability insurance and keep the improvements now existing or hereafter erected on the Property adequately insured against loss by fire and hazards included within the term "extended coverage" and the Lender shall be named as an additional mortgagee on any such policies. All insurance policies and renewals shall be delivered to the Lender for review within fifteen (15) days following Lender's request for same. If the Borrower fails to pay any premium before it is past due, then the Lender at its option may pay it and the amount paid shall be secured by this Mortgage as provided in paragraph 7 below.

6.      Preservation and Maintenance of Property; Leaseholds; Condominiums, Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing such condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent any other documents.

7.      Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, including its obligations under paragraphs 2 and 5, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option (and without any obligation), may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest in the Property. If Borrower is required to maintain mortgage insurance as a condition of this Mortgage or any other mortgage or deed of trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's written agreement or applicable law. Any amounts disbursed by Lender pursuant to this paragraph, with interest thereon, at the rate of twelve percent (12%) per annum, shall become additional indebtedness of the Borrower secured by this Mortgage. Unless Borrower and Lender agree otherwise, such amounts shall be payable upon demand. Nothing contained in this Paragraph 5 shall require Lender to incur any expense or take any action hereunder.

8.      Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property upon notice to Borrower specifying reasonable cause therefore related to the Lender's interest in the Property.

9.      Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation to the extent of the unpaid balance of all sums due or to become due under the Note or this Mortgage, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10.     Borrower Not Released; Forbearance by Lender Not a Waiver. No extension of the time for payment or modification of the terms or conditions of the Note or this Mortgage granted to Borrower shall operate or release Borrower, in any manner, from liability under the Note or this Mortgage. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.     Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements and references to Borrower and Lender herein contained shall bind, and the rights hereunder shall inure to, their respective heirs, successors and assigns. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the property to Lender under the terms of this Mortgage; is not personally liable on the Note or under this Mortgage; agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms

2

of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property. This Mortgage and the Note secured thereby are non-assumable.

**12.** **Notice.** Except for any notice required under applicable law to be given in another manner: (a) any notice to the Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail at the Property Address or at such other address as Borrower may designate by notice to the Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, to the address stated herein.

**13.** **Governing Law; Severability; Costs.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses," and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14.** **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation thereof.

**15.** **Acceleration; Remedies.** Upon the Borrower's breach of any covenant or agreement of the Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, or in the event that the Borrower shall have made a material misrepresentation or material omission in Borrower's application for the loan evidenced by the Note, Lender, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Prior to acceleration of this Mortgage, Lender shall give notice to Borrower as provided in Paragraph 12 hereof specifying (1) the breach (if the breach is curable); (2) the action required to cure such breach; (3) a date, not less than ten (10) days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower acceleration and foreclosure. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.

**16.** **Borrower's Right to Reinstate.** Notwithstanding the acceleration of the sums secured by this Mortgage due to the Borrower's breach, the Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in Paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) the Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and the Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured shall hereby remain in full force and effect as if no acceleration had occurred.

**17.** **Release.** Upon payment of all sums secured by this Mortgage, Lender shall prepare a written release of this Mortgage and provide same to the Borrower. The Borrower shall be responsible for recording the Release of Mortgage, including the cost of recording.

**18.** **Subordination.** Lender and Borrower acknowledge and agree that this Mortgage is subject and subordinate in all respects to the liens, terms, covenants and conditions of the First Mortgage and to all advances heretofore made or which may hereafter be made pursuant to the First Mortgage including all sums advanced for the purpose of (a) protecting or further securing the lien of the First Mortgage, curing defaults by the Borrower under the First Mortgage, or for any other purpose expressly permitted by the First Mortgage or (b) constructing, renovating, repairing, furnishing, fixturing or equipping the Property.

**19.** **Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, incurred in connection with the collection or enforcement of this Mortgage or of the Note, whether or not suit is brought and whether incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

**20.** **Special Provisions.**

(a) **Default.** In addition to any other event of default under this Mortgage, the Borrower will be in default if any of the following occur: (i) if Borrower submits (or at any earlier time submitted) incomplete, false or misleading information to the Lender before or after the approval of the Loan; (ii) if Borrower violates any terms and conditions of the Note, the terms and conditions of which are incorporated herein by reference, or any other loan document governing the Loan; (iii) if any representation or warranty made by the Borrower in connection with the Loan, including but not limited to any representation or warranty set forth in the Rider to Promissory Note, was not true and correct at all relevant times; or (iv) if Borrower fails to provide to the Lender on a timely basis any information required by the Lender in order for the Lender to monitor Borrower's continuing compliance with the terms and conditions of the Loan.

(b) **Mortgage Not Assumable.** This mortgage cannot be assumed.

(c) **Due on Sale or Refinance Clause.** Except as provided herein, if the Property is sold or refinanced at any time before the Maturity Date, the Principal Amount (or the balance thereof as shall not have been forgiven as provided in the Note at the time of such sale or refinancing) shall become immediately due and payable in full without notice or demand but, in the case of a sale, only to the extent there are sufficient net proceeds resulting from the sale, and, in the case of a refinance, only to the extent of any cash back to the Borrower. As used herein, net proceeds shall be the proceeds remaining after reducing the sales price by the following: usual and customary costs of sale and attorney's fees; taxes and any other payments due to federal, state and local governmental entities; and payment and satisfaction of the First Mortgage Loan. If the Lender determines that there are insufficient or no net proceeds from the sale after reducing the sale amount by the foregoing items, the Lender may forgive the balance of the loan in excess

3

of the available net proceeds so as not to create additional hardships on the Borrower at the time of closing. Notwithstanding the foregoing, the Lender will consider requests to subordinate this Mortgage where the First Mortgage is being modified or refinanced for purposes deemed by Lender to be favorable or in the best interests of the Borrower, the Borrower is not receiving any cash in the case of the refinance, and, in the case of a modification, will not otherwise violate or cause to be violated any requirements under the Lender's HHF or Elmore Programs. Subordination requests shall be subject to Lender's subordination policy in effect at the time of the request. Nothing herein contained shall be deemed to impose any obligation on the Lender to approve or consent to any subordination request.

(d)  **Limits on Personal Liability.** Notwithstanding any contrary provision in this Mortgage, Borrower's personal liability for payment of the indebtedness secured by this Mortgage and for performance of the other obligations to be performed by it under this Mortgage is limited in the manner, and to the extent, provided in the Note.

**IN WITNESS WHEREOF,** Borrower has executed this Mortgage on the date first above written.

**NOTICE TO BORROWER: DO NOT SIGN THIS MORTGAGE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.**

**THIS IS A BALLOON MORTGAGE AND, IF THE LOAN SECURED HEREBY IS NOT SOONER FORGIVEN, THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS UP TO $50,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

Witnesses:

Print name: _____

Print name: _____

Print name: _____

Witnesses:

Print name: _____

Print name: _____

Borrower
Print name: _____

STATE OF FLORIDA
COUNTY OF _____

The foregoing instr_____ acknowledged before me this ____ day of _____, 20__ by _____ and _____. Such person(s) is (are) (check one) ___ personally known to me or ___ produced valid driver's license(s) as identification.

Notary Public, State of Florida
Print Name: _____
Commission No.: _____
Commission Expires: _____

SARAH BARKER
MY COMMISSION # FF 906116
EXPIRES: September 27, 2019
Bonded Thru Notary Public Underwriters

4